1        IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF MARYLAND
2                  NORTHERN DIVISION

3    UNITED STATES OF AMERICA, )
                                )
4              vs.              )   CRIMINAL CASE NO.
                                )   1:22-cr-00220-RDB-1
5    SUMMER MCCROSKEY,          )   11:32 a.m.
     Defendant.                 )
6    _____ )      *REDACTED*

7                    THURSDAY, MAY 18, 2023
                        Courtroom 5D
8                     Baltimore, Maryland

9                 TRANSCRIPT OF PROCEEDINGS
                        SENTENCING
10        BEFORE THE HONORABLE RICHARD D. BENNETT

11   For the Government:

12   Paul A. Budlow, Esquire
     Colleen McGuinn, Esquire
13   US Attorney's Office
     36 South Charles Street, 4th Floor
14   Baltimore, MD 21201

15

     For the Defendant:
16
     David Walsh-Little, Esquire
17   Law Office of David Walsh-Little, LLC
     1014 West 36th Street
18   Baltimore, MD 21211

19   Also Present:

20   Rachel Corn, FBI Agent
     Richard Gianforcaro, FBI Agent
21   Paige Cameron, US Probation Agent

22   _____

          (Computer-aided Transcription of Stenotype Notes)
23
              Reported by:  Amanda L. Longmore, RPR, FCRR
24                Federal Official Court Reporter
                  101 W. Lombard Street, 4th Floor
25                 Baltimore, Maryland  21201
                        410-962-4474

1                    P R O C E E D I N G S

2

3          (Call to Order of the Court.)

4                    THE COURT:   Good morning, everyone.   This is calling

5     the case of the United States versus Summer McCroskey, Criminal

6     Number RDB-22-220.   The defendant was one of two defendants

7     indicted in a 22-count indictment charging conspiracy to commit

8     sexual exploitation and sexual exploitation of a child, along

9     with her husband Lawrence Colby, and he has yet to be

10    sentenced.   They both pled guilty.   And we are here for

11    sentencing today.

12          The masking policies of this court have previously

13    required that masks be worn in all public areas of the

14    courthouse with the exception in the discretion of the

15    presiding judge in a courtroom proceeding.   Those rules have

16    now been revised so that masks are no longer required in the

17    public areas of the courthouse.   It is still within the

18    discretion of the presiding judge in the courtroom.

19          My policy continues, in light of even a recent event in

20    this courthouse last Friday that resulted in it being a

21    spreader event that I do require that masks be worn in this

22    courtroom by those who have not been fully vaccinated and

23    boosted.   So I inquire of the vaccination status of counsel and

24    the parties before me, and I inquire of the members of the

25    public who are here, and it's on an honor system but if you

1   have not been fully vaccinated and boosted, I'll check in a

2   moment, I'll ask you to raise your hands.  We have plenty of

3   masks here for people to wear.  And we're not quite through the

4   pandemic yet.  As I said, there was an event within the last 10

5   days in this courthouse that caused quite a few people to come

6   down positive, so we're not out of the woods yet.  So my

7   courtroom still remains retrofitted with Plexiglass and I still

8   take that precaution here.

9        So with that, if counsel would identify themselves for the

10   record, please.

11              MR. BUDLOW:  Good morning, Your Honor.  For the

12   United States, Assistant United States Attorney Paul Budlow.

13              THE COURT:  And Mr. Budlow, you have been fully

14   vaccinated, correct?

15              MR. BUDLOW:  Yes.

16              THE COURT:  And with you is Assistant US Attorney

17   Colleen McGuinn.  And Ms. McGuinn, you have been fully

18   vaccinated?

19              MS. MCGUINN:  Yes, Your Honor, I have.

20              THE COURT:  Thank you.  And then we have with us US

21   Probation Officer Paige Cameron.  And Ms. Cameron, you've been

22   fully vaccinated?

23              MS. CAMERON:  Yes, Your Honor.

24              THE COURT:  So thank you very much.  Let me make a

25   note here.  And so you all may be seated.  With you we have FBI

1   Agents, Special Agents Rachel Corn and Richard Gianforcaro.

2       Mr. Gianforcaro, am I pronouncing your name correctly?

3           MR. GIANFORCARO:  Yes, sir.

4           THE COURT:  Have you both been fully vaccinated?

5           MR. GIANFORCARO:  I have, Your Honor.

6           MS. CORN:  Yes.

7           THE COURT:  Thank you.  Again, you're permitted to

8   wear masks if you desire but you don't have to.

9       And on behalf of the defendant?

10          MR. WALSH-LITTLE:  Good morning, Your Honor.  David

11  Walsh-Little on behalf of Summer McCroskey.  She's to my right.

12          THE COURT:  Yes.  Mr. Walsh-Little, nice to see you,

13  and you are court appointed in this case.

14          MR. WALSH-LITTLE:  Yes, Your Honor.

15          THE COURT:  And I want to thank you for your service

16  to the Court in that regard.  The record will reflect that

17  Mr. Walsh-Little is well known to the Court and a former

18  Assistant Federal Public Defender and is now in private

19  practice and has been appointed court-appointed counsel in this

20  case.

21      And last but certainly not least, Ms. McCroskey, good

22  morning to you.

23          THE DEFENDANT:  Good morning.

24          THE COURT:  And have you been fully vaccinated?

25          THE DEFENDANT:  No, sir.

1          THE COURT:  All right.  Well, then you'll have --

2    Mr. Walsh-Little, if you'll retrieve a mask here,

3    Ms. McCroskey, you will wear that mask unless I'm speaking with

4    you and you're responding to me, but you will keep that mask on

5    during these proceedings.

6          And with respect to members of the public, whoever's here,

7    those of you that have not been fully vaccinated and boosted,

8    if you would raise your right hand, please.  I am pleased to

9    confirm that everyone has kept their hands down and

10   indicates -- we're on an honor system here but you've all been

11   fully vaccinated.  So with that, we are ready to proceed.

12         There's clearly been a notice to victims in this matter,

13   not only as to the infant child who was a victim here with

14   respect to Counts 1, 2, 3, 5, 7, 8, 9, and 10; as well as

15   distribution of child pornography, Counts 11, 12, 13, 15, and

16   17; but also the possession of child pornography, Counts 19,

17   20, and 21, in light of the victim impact statements that I've

18   received.  Is that correct, Mr. Budlow?  Clearly there's been a

19   notice to victims.

20         MR. BUDLOW:  Yes, Your Honor.

21         THE COURT:  Now, so we clarify that, I have numerous

22   impact statements, victim impact statements that are not

23   related to some of the counts here or many of the counts that

24   relate to a particular minor victim here.  And I'm just

25   verifying that these victim impact statements come from many

1       victims in terms of the Internet child pornography chain,

2       including the Tara series and others.  And I've seen these

3       impact statements before.  I'm just confirming that's what --

4       there's a whole batch of these that all relate to either the

5       distribution or the possession of child pornography, correct,

6       Mr. Budlow?

7                MR. BUDLOW:  With one exception, which I believe

8       you're going to get to.  So there's a batch that were sent

9       earlier that all relate to those images that were distributed

10      or found on devices.  There's one victim impact statement that

11      does come from a representative of the victim of the Counts 1

12      through 10.

13               THE COURT:  Okay.  It comes from a representative of

14      the victim in count -- the infant victim --

15               MR. BUDLOW:  Yes.

16               THE COURT:  -- subject in this case.

17               MR. BUDLOW:  That's correct.

18               THE COURT:  Well, I've read through all of these.

19      This is a considerable amount of material I have up here and

20      I've read through that.  I'm just not sure which one that was

21      and so I just -- was sort of lost in a series of -- because I

22      always look through these but, as you know, there are a series

23      of, you know, the Helga series, the Tara series, many of these,

24      and so I went through all the victim impact statements.  Which

25      one are you referring to?  I'm sorry.

1          MR. BUDLOW:  Your Honor, I have a copy with me.

2          THE COURT:  That would be helpful.  It would save

3   time.

4          MR. BUDLOW:  I think the end of last week or the

5   beginning of this week, but if I can approach.

6          THE COURT:  Mr. Walsh-Little, you have a copy of

7   that, correct?

8          MR. WALSH-LITTLE: Yes, Your Honor.  I do.

9          THE COURT:  Mr. Carrick, if you'll retrieve that.

10  Thank you, Mr. Budlow.  Let me just take a look here.

11      Yes, I will hold this and will be addressing this during

12  allocution then, Mr. Budlow.  As know these others, essentially

13  there had been an effort, there had been a request to make them

14  part of the presentence report in this case, correct,

15  Mr. Budlow?

16          MR. BUDLOW:  Yes, Your Honor.

17          THE COURT:  But they've not yet been made part of it,

18  have they?  I don't believe.

19          MR. BUDLOW:  No, Your Honor.

20          THE COURT:  If you'll come and retrieve these, take a

21  look at these for a moment just to make sure that I have all of

22  those.  Mr. Carrick, why don't you look at those and we'll make

23  sure that that supplements the presentence report and

24  Ms. Cameron can do so accordingly after these proceedings.

25      You can do that, correct, Ms. Cameron?

 1          MS. CAMERON:  Yes, Your Honor.  I would note --

 2          THE COURT:  Just take a quick look, Mr. Budlow.  I'm

 3   fairly certain that all of those -- I know one is from the Tara

 4   series.  Ms. McGuinn can take a look as well.

 5          MR. BUDLOW:  Yes, Your Honor.

 6          THE COURT:  All right.  Then I will have those marked

 7   as Court Exhibit 1 and, Mr. Carrick, if you'll coordinate with

 8   Ms. Cameron at the conclusion of these proceedings, and they

 9   will be made part of the record in the case, part of the

10   presentence report.  Is that agreeable to you, Mr. Budlow?

11          MR. BUDLOW:  Yes.

12          THE COURT:  Agreeable to you, Mr. Walsh-Little?

13          MR. WALSH-LITTLE:  Yes, Your Honor.

14          THE COURT:  All right.  So with that, Ms. -- I would

15   also note before we have Ms. McCroskey stand that there was a

16   preliminary order of forfeiture submitted in this case which

17   was signed by me yesterday with respect to the forfeiture of

18   certain assets here, including an iPhone -- a Samsung, iPhone,

19   a Motorola, computer equipment.  All of that is Paper Number 67

20   that was signed yesterday and is a matter of record here.

21          And there was also an order that was previously signed

22   with respect to the disclosing sealed filings and I think that

23   related to the matter of the Cecil County Department of Social

24   Services and a request with respect to certain rights having to

25   do with the infant victim in this case, Mr. Budlow, and that

1    has been signed.  There's nothing further for me to do on that.

2              MR. BUDLOW:  That's correct, Your Honor.  Those

3    documents have been provided.

4              THE COURT:  They've lawfully been provided and Ms. --

5    thank you.  You can keep them down with you.  Thank you very

6    much on that.  So with that, I think that we are ready to

7    proceed here.

8         If you'll please stand, Ms. McCroskey.  I want to verify

9    that you've had an opportunity to review the Presentence

10   Investigation Report in this case which was prepared by

11   Ms. Paige Cameron.  Have you had an opportunity to review it?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  And approximately how many times have you

14   discussed it with Mr. Walsh-Little?

15             THE DEFENDANT:  About four or five times.

16             THE COURT:  Are you satisfied you've had a sufficient

17   amount of time to go over it with him?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  And there are no corrections or

20   objections by the Government; is that correct, Mr. Budlow?

21             MR. BUDLOW:  That is correct.

22             THE COURT:  And Mr. Walsh-Little, as to any of your

23   corrections, they mainly related I believe to just references

24   to another child ████████████████████

25   ██████.

1        MR. WALSH-LITTLE:  I would withdraw that, Your Honor.

2        THE COURT:  Okay.  That's withdrawn.  So are there

3    any other corrections or objections?

4        MR. WALSH-LITTLE:  No, Your Honor.

5        THE COURT:  All right.  So there are no other

6    corrections or objections to address here.  I would note just

7    for the record that on May the 15th, Monday of this week, I

8    reviewed a 15-minute tape in the presence of counsel with

9    respect to the depiction of the abuse of the infant victim in

10   this case that relates -- the infant victim in this case

11   relates to both not only Count 1 and Counts 2, 3, 5, 7, 8, 9,

12   and 10, but also as to some, if not all, of the charges as to

13   distribution, Counts 11, 12, 13, 15, and 17.

14       Is that right, Mr. Budlow?

15       MR. BUDLOW:  Yes, Your Honor.

16       THE COURT:  All right.  Now, the infant victim then

17   relates to all of those.  She does not relate specifically to

18   Counts 19, 20, and 21 in terms of possession of child

19   pornography?

20       MR. BUDLOW:  Court's indulgence.

21       THE COURT:  All right.  I'm just trying to clarify, I

22   know that there's also victims of the various series here.

23       MR. BUDLOW:  The images that are the subjects of the

24   production counts.

25       THE COURT:  Yes.

1          MR. BUDLOW:  Some of those were on those devices.

2          THE COURT:  Okay.  19, 20, and 21 include other

3    matters as well?

4          MR. BUDLOW:  That's correct.

5          THE COURT:  All right.  Fine.  Yes, obviously in

6    terms -- to the extent that there's possession of -- depiction

7    as to the infant victim here in this case, that would be --

8    relate to those counts as well anyway.  That material was

9    reviewed by me on May 15th and I indicated at that time that

10   that tape would be introduced as Government Exhibit 1 for

11   purposes of today's proceeding.

12       Mr. Budlow, do you have that particular exhibit marked as

13   Government Exhibit 1?

14         MR. BUDLOW:  We have already marked it as Government

15   Exhibit 1, yes.

16         THE COURT:  All right.  We can submit that now, if

17   you like, make it part of the record, to be included in the

18   record or you want --

19         MR. BUDLOW:  Because it contains contraband, what

20   I've done in the past is just put a court sticker on it and

21   then the FBI places it in evidence.

22         THE COURT:  That's perfectly fine.  That's perfectly

23   fine.  So that's the way that will be handled just as a matter

24   of record here if there's any question about it.

25         MR. BUDLOW:  Yes.

1          THE COURT:  Thank you, Mr. Budlow.  So with that, let

2     me just go over the process here, Ms. McCroskey, with respect

3     to the sentencing procedure in this matter.

4          Mr. Walsh-Little, are there any family members here with

5     Ms. McCroskey today?

6          MR. WALSH-LITTLE:  No, Your Honor.

7          THE COURT:  Are there any witnesses you intend to

8     call on her behalf other than giving her -- I'll give her an

9     opportunity to speak to the Court?

10         MR. WALSH-LITTLE:  No, Your Honor.

11         THE COURT:  All right.  I know I went over this with

12    you when you pled guilty before me on February the 2nd,

13    Ms. McCroskey, but I'll go over this with you again.

14         There are basically -- you pled guilty not pursuant to any

15    plea agreement but essentially pled guilty to the indictment.

16    There are two key opinions of the United States Supreme Court

17    that outline the process for sentencing in federal courts, and

18    this is true for all federal courts in the United States.

19         First of all, in a case of United States versus Booker in

20    January of 2005, the United States Supreme Court upheld the

21    constitutionality of the Federal Sentencing Guidelines which

22    are referenced in the Presentence Investigation Report.  But

23    the Supreme Court upheld the constitutionality of the Federal

24    Sentencing Guidelines with the deletion of two particular

25    sections of the guidelines which had previously rendered the

1   guidelines mandatory.  These are the guidelines that result

2   from the Sentencing Reform Act in the 1980s.  Specifically, the

3   Supreme Court in the Booker case, now over 18 years ago, held

4   that with the deletion of those particular mandatory provisions

5   of the guidelines, the balance of the Federal Sentencing

6   Guidelines was constitutional.  And the Supreme Court held that

7   with the deletion of those, the Federal Sentencing Guidelines

8   were rendered effectively advisory or to be applied in an

9   advisory context, meaning that federal judges, while not bound

10  to apply the guidelines, must still consult them and take them

11  into account when imposing a sentence, subject to review by

12  courts of appeals for unreasonableness.

13          The guilty plea in this case was such that there is no

14  plea agreement, and the record will reflect that the Government

15  is free to appeal the sentence I ultimately impose here today

16  if it feels it's not appropriate, and your attorney,

17  Mr. Walsh-Little, has preserved the right to appeal any

18  sentence I impose in this case if he feels it's too harsh.

19          Do you understand that?

20              THE DEFENDANT:  Yes, sir.

21              THE COURT:  Have I correctly summarized that from the

22  point of view of the Government, Mr. Budlow?

23              MR. BUDLOW:  You have, Your Honor.

24              THE COURT:  Correct from your point of view,

25  Mr. Walsh-Little?

1         MR. WALSH-LITTLE:  Yes, Your Honor.

2         THE COURT:  All right.  The factors I'm going to be

3    considering here will include not only the guidelines but also

4    other factors under 18 United States Code § 3553.  Those

5    factors include your personal history and characteristics, the

6    nature and circumstances of this offense, which are horrific to

7    say the least, and other factors, as well as factors --

8    sentences imposed upon similarly situated individuals.

9    Although I would note ███████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ████████████████████████████  I really have had difficulty finding

12   any similar cases.

13        I said there were two key opinions, and the second of

14   those two key opinions of the Supreme Court, there's the case

15   of Gall versus the United States which was decided in December

16   of 2007, about three years after the Booker case, in which the

17   Supreme Court specifically noted that federal judges should not

18   presume that the guideline range is reasonable but it is a

19   starting point in a multistep process pursuant to which first

20   there's a calculation of the advisory guideline range and then

21   there's a consideration of other factors apart from the

22   guidelines, the goal being to impose a sentence which is

23   sufficient but not greater than necessary to achieve the goals

24   of sentencing.

25        So here in a few moments I will hear from the Government

1  in allocution, I'll hear from Mr. Walsh-Little, and I will give

2  you an opportunity to address the Court as well.

3      Do you understand that general process?

4      THE DEFENDANT:  Yes, sir.

5      THE COURT:  And have you discussed the matter of the

6  Federal Sentencing Guidelines with your attorney,

7  Mr. Walsh-Little?

8      THE DEFENDANT:  Yes.

9      THE COURT:  Now, a few other housekeeping matters I

10  need to address in terms of -- first of all, I note that there

11  has been some reference to your suffering from depression and

12  certain mental health issues, and I want to clarify, are you on

13  any kind of medication today?

14      THE DEFENDANT:  Yes, sir.

15      THE COURT:  And just looking here through the

16  Presentence Investigation Report -- hold on one second here.

17  Did you take medication this morning?

18      THE DEFENDANT:  Yes, sir.

19      THE COURT:  And what medication did you take?

20      THE DEFENDANT:  I took a BuSpar and a Claritin, and

21  they have me on a new antipsychotic medication and I don't know

22  the name of it.

23      THE COURT:  All right.  And what time did you take

24  that medication this morning?

25      THE DEFENDANT:  Around 6 o'clock.

1            THE COURT:  And you take that every day?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  And is that having any negative effect

4    upon you here today?

5            THE DEFENDANT:  No, sir.

6            THE COURT:  Mr. Walsh-Little, are you satisfied that

7    Ms. McCroskey is competent to proceed with sentencing here

8    today?

9            MR. WALSH-LITTLE:  Yes, Your Honor.  I'm satisfied.

10           THE COURT:  So with that, the last housekeeping

11   matter are the procedures required by the PROTECT Act of 2003,

12   which is a law that was passed by the US Congress in that year,

13   and among the many provisions of the PROTECT Act there are

14   provisions that relate to federal courts when imposing

15   sentences in federal criminal cases.

16        Specifically, the PROTECT Act requires that the Chief

17   Judge of each federal court in the United States ensure that

18   within 30 days of the imposition of sentence that certain

19   documents go over to the US Sentencing Commission in

20   Washington.  Those documents include the Judgment and

21   Commitment Order, which I'll be preparing immediately after

22   these proceedings with the assistance of Mr. Carrick, the

23   courtroom deputy clerk; the statement of reasons for the

24   sentence imposed; a copy of any plea agreement in the case,

25   which is not applicable here, there are letters that were

1   submitted that were introduced at the time you pled guilty on

2   February the 2nd but there is no plea agreement; a copy of the

3   indictment in this case, which is a 22-count indictment in

4   which you're charged in counts -- in 16 of those 22 counts; the

5   Presentence Investigation Report and any other information the

6   Sentencing Commission finds appropriate.  All that information

7   goes over to the US Sentencing Commission in Washington.  And

8   the Chief Judge of this court in 2003 directed the Probation

9   Office to forward these documents to the US Sentencing

10  Commission in Washington.

11      That means that some of these documents, Ms. McCroskey,

12  may be subject to review by other public officials over in

13  Washington or perhaps by even members of the public.  And for a

14  long period of time it has been the policy here in this court

15  that there is a section marked "Defendant Characteristics" in

16  the Presentence Investigation Report containing confidential

17  family information, ███████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████ and other information including your mental health

21  history.

22      All that type of information is in the Defendant

23  Characteristics Section Part C, and pursuant to an

24  Administrative Order dating back almost 20 years and revised in

25  2015, Part C of the presentence report containing that kind of

1   confidential family information is subject to administrative

2   seal here at the Court.  I have reviewed it, another judge of

3   this court could review it if he or she so chose, none have,

4   and members of the US Sentencing Commission over in Washington

5   can review it but no one else is permitted to see it absent

6   further order of this court.  Do you understand that?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:   That means that technically the President

9   of the United States could request to see it and he would have

10  to seek an order for me to clear it for even him to review it.

11  Do you understand that?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:   To all other extent, the requirements of

14  the PROTECT Act are still mandated and to be complied with.

15       Now, I said the first step here is a calculation of the

16  advisory guideline range which is set forth on Pages 9 through

17  14 of your Presentence Investigation Report and as to which

18  there's no objection either by Government counsel or your

19  counsel.  It relates to the base offense level as to the

20  distribution of child pornography in Counts 11, 12, 13, 15, 17,

21  19, 20, 21, and 9.  It relates to the -- essentially the

22  calculation of the offense level here.

23       As to Group 2, the sexual exploitation of a child that is

24  charged in Counts 2, 3, 5, 7, 8, 9, and 10.  It relates to

25  another grouping with respect to the remaining charges in this

1    case.  Suffice it to say, with the complex Federal Sentencing

2    Guidelines and grouping rules, it comes to a total offense

3    level of 58.  There is a two-level downward adjustment because

4    of your acceptance of responsibility.  And, Mr. Budlow, it's my

5    understanding the Government is moving for a third level in

6    that regard; is that right?

7               MR. BUDLOW:  I would move for that level, yes.

8               THE COURT:  That will be granted.  There was no plea

9    agreement but it will be granted.  So there's a total offense

10   level of 43, which is as high as the sentencing guideline table

11   goes in terms of offense levels.

12        You have no known criminal convictions of any kind.  The

13   only criminal matter on your record is the state case which

14   related to this case which was essentially nolle-prossed by the

15   state authorities when it was referred to the FBI and federal

16   authorities.

17        So with a total offense level of 43 and Criminal History

18   Category of I, your sentencing guideline range is life

19   imprisonment is essentially what the guideline range is in this

20   case.  There are no disputed matters for me to address in terms

21   of that calculation.

22        So with that, I believe unless there's anything further

23   from counsel, you may be seated, and I'll first hear from

24   Mr. Budlow or Ms. McGuinn speaking on behalf of the Government,

25   and I have read the Government's sentencing memorandum, Paper

Sentencing *REDACTED* 5/18/23

1     Number 63 that was filed on May the 8th.

2          Mr. Budlow, I'll be glad to hear from you.

3          MR. BUDLOW:  Thank you, Your Honor.  I would also

4     like to address a couple of housekeeping items first.  I would

5     like the Court to know that some of the people who are in the

6     courtroom today include representatives from Cecil County

7     Department of Social Services, both supervisors and caseworkers

8     that have been involved with the victim in this case.  Also

9     there's --

10          THE COURT:  If those people could stand, perhaps, if

11     that's possible, those that are here from Cecil County.

12          Welcome, all of you, and thank you for your work on a

13     very, very difficult case.  Very difficult case.  I want to

14     thank all of you for your time and please extend my regards to

15     the Cecil County officials up there.  Thank you.

16          MR. BUDLOW:  Your Honor, there's also representatives

17     from the Cecil County State's Attorney's Office and Cecil

18     County Sheriff's Office who assisted in the investigation, as

19     well, with the Federal Bureau of Investigation.

20          THE COURT:  I'd like thank them as well.  Nice to

21     have you all here.  You're welcome to be here, and I can recall

22     my different tours as a federal prosecutor as well as in

23     private practice and always found the State's Attorney's Office

24     in Cecil County to be topnotch.  So nice to have you here.

25     Nice to have you.

Sentencing *REDACTED* 5/18/23

1          MR. BUDLOW:  Your Honor, you referenced the victim
2     impact statements from the nonvictims in this case.
3          THE COURT:  Yeah.
4          MR. BUDLOW:  Or the nonvictims of the production.
5          THE COURT:  Well, they're victims but they're
6     relating to the later counts in the indictment.
7          MR. BUDLOW:  I want to let the Court know that, I'm
8     not sure if we forwarded these to the Court, but there are also
9     restitution requests that they initially made.  They have
10    withdrawn those requests so there's no restitution requests on
11    behalf of those victims.
12         THE COURT:  I was going to ask because I didn't see
13    any that had been submitted.
14         MR. BUDLOW:  And also that there's an agreement with
15    respect to restitution for the victim of the production counts,
16    Counts 1 and through 10, and that's is initially going to be a
17    $50,000 restitution order agreed that would be joint and
18    several, and I have the contact information I'll provide to the
19    clerk.
20         THE COURT:  And that's essentially for those who were
21    either in foster care or parental assumption of rights, however
22    that plays out in Cecil County, that $50,000 will be
23    distributed for the benefit of the infant victim, correct?
24         MR. BUDLOW:  Yes, Your Honor.
25         THE COURT:  Okay.  And when will that order be

1   submitted to the Court?

2           MR. BUDLOW:  Your Honor, I think the Court can order

3   it as part of the J&C today but I just need to provide the

4   contact information.

5           THE COURT:  That's fine.  There will be a $50,000

6   restitution order, and that's not in any kind of monthly

7   payment.  That is a full payment of some sort; is that right?

8           MR. BUDLOW:  There's currently no assets that the

9   Government is aware of that's just --

10          THE COURT:  That's the thrust of my question.  I'm

11  not sure between Mr. Colby and Ms. McCroskey what assets they

12  have, and I'm just trying to clarify how do you want that

13  listed?  I'll list it as a $50,000 restitution order.

14          MR. BUDLOW:  That's what I'm asking that it be made

15  due immediately as sort of a typical order is, so it would come

16  out of -- I think it's the Inmate Responsibility Program.

17  Then, of course, if either of the defendants were released and

18  worked or if they received any inheritance or won the

19  lottery --

20          THE COURT:  Right, that's fine.  I'll indicate it be

21  paid immediately and we'll make sure, Mr. Carrick, that the box

22  is checked that it shall come out of any prisoner pay vouchers

23  of any kind.

24          MR. BUDLOW:  Thank you, Your Honor.

25          THE COURT:  Thank you.

1    MR. BUDLOW:  And I know this is sort of by law any
2  reference to the victim's relationship or name is sealed and
3  redacted, but I'd just like to put it on the record so that
4  when we read the transcript before it's released, the
5  Government will have an opportunity to review that so that the
6  relationship and names can be redacted.
7    THE COURT:  That's fine.  And that goes for any
8  reference by me in the transcript to the familial relationship
9  between the infant victim and Ms. McCroskey and Mr. Colby, but
10  clearly, Mr. Budlow, it is hard not to address that in the
11  context of the appropriate penalties to be imposed, so I fully
12  intend to do so, but then it can be sealed on the record here.
13    MR. BUDLOW:  Agreed, or at least we can review for
14  redactions.
15    THE COURT:  That's fine.  But this is a matter of
16  public record, so to the extent there are people here in the
17  courtroom, it's a matter of record here publicly.
18    MR. BUDLOW:  Understood.  Thank you, Your Honor.
19    As you mentioned, there's no dispute as to the guidelines.





Sentencing *REDACTED* 5/18/23

1   ███████████

2                   ██████████████████

3           MR. BUDLOW:  Your Honor, with respect to the

4   Government's argument --

5           THE COURT:  By the way, Mr. Budlow, before we get too

6   deep into the arguments, if you would remind me at the end of

7   these proceedings, Mr. Carrick, as to -- I think it's some

8   seven officials of Cecil County who are here, I'd be glad to

9   have them visit my chambers when we finish these proceedings

10  and personally thank them for their work on this matter.

11          I've seen the FBI agents here numerous times and Special

12  Agent Rachel Corn has been in my courtroom on far too many

13  occasions in terms of these kinds of cases, but I think that as

14  to the efforts that Cecil County has made, I would just

15  personally as a courtesy from this court to that court see them

16  in my chambers afterwards.

17          Any objection, Mr. Walsh-Little?

18          MR. WALSH-LITTLE:  Your Honor, not to you seeing them

19  in your chambers.  I wanted to address the preponderance

20  finding.

21          THE COURT:  Okay.  On that matter, I'm going to see

22  them after we end here.  On the preponderance matter, you're

23  addressing Paragraphs 144 and 146?

24          MR. WALSH-LITTLE:  Yes.  And I believe what some of

25  the arguments that the Government made, these texts are texts.

1    They weren't admissions to law enforcement or --

2         THE COURT:  I understand.

3         MR. WALSH-LITTLE:  I mean, it would be our position

4    that that's not necessarily enough to make a finding that the

5    actual abuse occurred.

6         THE COURT:  No, I don't need to.  And I don't -- by

7    preponderance of the evidence, I understand what the Government

8    is proffering, it's not going to be -- it really will have no

9    effect upon the sentence.  It has no effect upon the sentence

10   I'm going to impose here.

11        MR. WALSH-LITTLE:  Yes, Your Honor.

12        THE COURT:  ████████████████████████████████████

13   ████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████

15   ██████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████

17   ████████████████████████████████████

18        MR. WALSH-LITTLE:  Yes, Your Honor.  Thank you.

19        THE COURT:  That's fine.  That's noted.  So I

20   understand that, Mr. Budlow.

21        MR. BUDLOW:  Thank you, Your Honor.  Your Honor, the

22   issue that you have before you today is what sentence should a

23   defendant receive for violently raping an infant over and over.

24   And the Government's view is that by imposing a life-equivalent

25   sentence, at least, that would reflect the life sentence that

1  she's inflicted ██████████████.  There can be no question

2  that the defendant's conduct in this case represents just

3  simply the worst of the worst criminal conduct this Court will

4  see, that I have seen, that my co-counsel has seen.  There's no

5  question that the conduct was repeated and premeditated, and

6  that it was intentional and the product of the defendant's free

7  choice.  And there's also no question that she derived sexual

8  pleasure from this horrific abuse ████████████████.  And

9  there's also no question that the victim suffered just horrific

10  and indescribable pain during that repeated abuse.

11      So how does the Court provide justice both to the victim

12  and to society for this conduct?  Again, by imposing a sentence

13  that demonstrates that these extreme acts will be met with

14  extreme consequences, and a sentence of 230 years, which is the

15  Government's position is the appropriate sentence in this case,

16  will accomplish that.

17      And the Government is aware that we're asking you to

18  impose this not just life-equivalent sentence but 230 years

19  despite the fact that the defendant fairly early indicated an

20  intent to plead guilty and ultimately did plead guilty.  And

21  the Government appreciates the fact that the defendant accepted

22  responsibility and then admitted eventually by agreeing to the

23  Government's version to all of the acts, all of her conduct,

24  and that there was no trial.  But I want to be clear that the

25  evidence in this case was overwhelming.  And so a trial, which

1    would have been her right, would have resulted in the same

2    situation.  There was a confession, there was the videos, the

3    defendant's clearly identified, and no victim would have had to

4    testify.  So there was -- the Government was never

5    contemplating calling a victim if the defendant wanted a trial

6    if there would have been a trial.

7         As the Court is aware, in general, child sex abuse is just

8    simply the worst crime imaginable.  But here we have not just a

9    child but ▮▮▮▮▮▮▮▮▮▮ an infant.  The defendant --

10   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14   ▮▮▮▮▮▮▮▮▮▮▮▮ She texted how

15   she was looking forward to it, and she clearly encouraged her

16   codefendant.  She egged him on.  And all along, she knew

17   exactly who she was because she had been here before.

18        I want to address a few of the defense arguments, and I

19   know Your Honor will in whatever sentence you impose address

20   all of the defense arguments.  I'm not going to address all of

21   them but I want to hit on a few.

22        The defendant mentions in passing in her sentencing

23   memoranda that there's remorse.  That's what Mr. Walsh-Little

24   wrote.  But there has been zero expression of remorse.  And if

25   there is one, based on the evidence that the Court has, it

1   should not be believed.  Not only did Summer McCroskey know

2   that she was a pedophile and sexually attracted to ███████

3   children, but she bragged about her plans to rape that child

4   over and over again ███████████████████████.  And I don't

5   know if there could be a worst fact in this case, but one of

6   the worst facts is that she was fully aware of the victim's

7   pain and even believed, hopefully wrongfully so, that the

8   victim would remember the abuse, and it didn't bother her at

9   all.

10         Now, the defendant also claims in her submission and

11   request for a lesser sentence that she should get a lesser

12   sentence because she had a difficult childhood which is

13   documented, that she suffered from abuse and neglect, which is

14   somewhat documented and that she was the victim of sexual abuse

15   herself, which is only slightly documented and it may or may

16   not be true.  But this claimed abuse clearly does not justify

17   or excuse the defendant's current exploitive conduct of her

18   infant which is far worse and far more sadistic than anything

19   that she claims to have experienced.

20         The appropriate response to her claim is to encourage that

21   she get services and counseling in combination with the

22   sentence that reflects the seriousness of her conduct.  To the

23   extent that this prior abuse has any bearing on these offenses,

24   it is clearly outweighed by the nature of the abuse, the length

25   of the abuse, and the real concerns of the future dangerousness

1    that the defendant presents.

2         Rather than excusing her criminal conduct, this past

3    alleged trauma suggests really the need for more harsh

4    punishment because if someone should be empathetic and

5    understand the harm caused by child sexual abuse, it should be

6    someone who claims to have suffered it themselves.

7         The defendant also may be implicitly, maybe explicitly

8    depending on your reading of the memo, blames her codefendant.

9    She indicates that it was the desire to please him that she

10   engaged in this conduct.  Those claims are just simply not

11   believable.  The evidence supports her initiation and personal

12   gratification and her prior sexual interest in children in an

13   overwhelming way and there's three places.  One, the messages

14   that I won't read all in detail.

15        THE COURT:  But they're all a matter of record in

16   your sentencing memo.

17        MR. BUDLOW:  They're in the memo and they're an

18   attachment, and I will touch on a bit of them later, but they

19   show that she often initiated and that she engaged in it and

20   looked forward to it really with glee and that she planned it,

21   not all, but that she was equally or more so engaged in the

22   initiation and planning.

23        Additionally, Your Honor saw and heard the videos of her

24   abuse.  She's heard laughing, giggling, making really some of

25   the most vile sexual comments about the acts being perpetuated

1 ███████████████ that are almost unimaginable.  There's no sense

2 of coercion or intent to please somebody else.  As unfathomable

3 as it is, she was thoroughly enjoying what was going on.  And

4 the last point, and we made this in our sentencing memo, is

5 that a number of these counts, there's no indication of a

6 second person involved.  This is the defendant exploiting and

7 abusing and recording the abuse for her own sexual

8 gratification purely, and the idea that she would blame

9 somebody else for this conduct is just contradictory to common

10 sense and to the evidence in this case.

11         Your Honor, there's -- again, I reference -- I'm not going

12 to go through all of the quotes and it's hard to look at them

13 and decide --

14              THE COURT:   I have read through quite a few of them

15 already, Mr. Budlow.

16              MR. BUDLOW:   What I did want to remind the Court

17 that's in there, and I referenced this earlier, it's that she

18 had complete knowledge of what she was doing while it was going

19 on, not just that she was sexually attracted to children and

20 that she had that issue, and not just that she was enjoying it,

21 but she was fully aware of pain and trauma and the real risk of

22 lifelong pain and trauma as result of her conduct and then she

23 kept doing it.

24         There's a series of messages between her and her

25 codefendant in November of 2021 where she says "That was the

1    day you were finally able to go all the way inside of her, too,

2    maybe she got turned on from you hitting a nerve or maybe it

3    was the thought of not being able to stop, but either way she

4    still remembers and I think she'll always remember you raping

5    her."

6         Then she says, "Makes me think maybe it's too late to stop

7    the Pedo stuff, makes me think we should teach her it's normal

8    so we don't get in trouble, all because she remembers how

9    painful your cock is but also how enjoyable it is, too."

10        Later on her codefendant says, "But as of right now I

11   think she's definitely going to remember based on how she

12   acts."  The defendant responds "I think so, too.  I just don't

13   know how to start without her freaking out about it."

14        Later on the defendant says, "We would have to make it

15   pleasurable for her but it seems like she likes your cock more

16   than the trainers."

17        For the record, Your Honor, I want to make sure the Court

18   understands that what I didn't know when I read this or watched

19   the videos is that trainers are a physical device, an insert

20   that the defendants placed inside of the victim to make access

21   and penetration more easy for them.

22        Lastly, the defendant also wrote in this same exchange,

23   "Or we could be really fucked up and we continue for a few

24   years, rape her, drug her, rape her, cum in all her holes, and

25   when she gets a boyfriend stop and tell her she needs to fuck

1    him instead."

2         Again, there's thousands of lines like this, and if those

3    existed alone, one would say maybe they were just having some

4    sick conversation, but these are two people who are literally

5    doing and recording everything that they say and it's so clear

6    that she knows every consequence of her action.

7         Based on all of that, 230 years is necessary.  When

8    looking at the 3553(a) factors, the first one is that the

9    defendant in this case must be deterred; thus, the only way to

10   do that, based on her history and based on the conduct in this

11   case is make sure that the sentence the Court imposes keeps her

12   in prison for the rest of her life.

13        Your Honor knows that defendants do not age out of their

14   sexual attraction to children, so at whatever age this

15   defendant is, if she has access to a child, she is a danger.

16   The prior incidents in Texas and California, ████████████

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████ did not stop her from seeking out a

19   like-minded individual, ███████████████, committing this

20   conduct, and planning to continue to do so.

21        Next, others must be deterred.  As much as we wish that

22   there was nobody else in the world like Lawrence Colby and

23   Summer McCroskey, sadly this isn't the first case that's ever

24   existed like this.  So others need to know that a significant

25   and a shockingly long sentence will result from this conduct.

1        Additionally, the Court's sentence should reflect the

2   seriousness of the offense, it should promote respect for the

3   law and it should be a just punishment.  This conduct is about

4   as awful as anyone could imagine.  And so a shockingly large

5   sentence is necessary to reflect the seriousness, the respect

6   for the law, and the just punishment because this Court has

7   handed down sentences of 40 years and 50 years, in effect life

8   sentences before, and those cases cannot possibly compare to

9   what this defendant has done.

10       Your Honor, I'd also ask you, as I know you would consider

11  in the sentence in this case the lasting impact that the

12  defendant's conduct has had on the victim.  Child rape has

13  permanent psychological emotional impact and sometimes lasting

14  physical impact on a child.  This case like all of those others

15  will result in years of anguish for the defendant's doing.  It

16  will be endured by her and the people who have volunteered to

17  care for her will all suffer the consequences for many years of

18  the defendant's actions.

19       So again, the question is, what's the appropriate sentence

20  for a defendant who violently rapes an infant multiple times

21  over nearly two years, recorded the abuse, disseminated videos

22  of that abuse for the world to watch in ways that will never

23  come back.  Those videos are gone.  They're out there.  The

24  victim's abuse, this is just always going to be there.  It's an

25  inconceivable question but with an easy answer.  There isn't a

1    number high enough.  But at least 230 years, at least 230 years

2    is appropriate.

3           THE COURT:  Thank you, Mr. Budlow.  Let me ask you a

4    few questions here.  It seems to me that when you refer to a

5    life-equivalent sentence, and I certainly understand your

6    argument in that regard, I think that in terms of a

7    life-equivalent sentence there does need to be an analysis of

8    the groups of sentencing here.

9       The Fourth Circuit has in United States versus Chase, a

10    Fourth Circuit opinion in where certiorari was denied about 20

11    years ago noted the matter of approving stacking of grouped

12    offenses to impose consecutive sentences, and I just need to

13    address that with you for a moment here, if I can.

14       Essentially, as to Count 1, which is the conspiracy to

15    commit sexual exploitation of a child, that is separate from

16    the sexual exploitation of a child itself in Counts 2, 3, 5, 7,

17    8, 9, and 10.  As to Count 1, the statutory framework is 15

18    years to 30 years' imprisonment.  And then as to the sexual

19    exploitation of a child, Counts 2, 3, 5, 7, 8, 9, and 10, the

20    statutory framework is 15 years to 30 years' imprisonment.

21       As to those, first of all, the conspiracy count is

22    separate from the sexual exploitation of a child and looking at

23    the presentence report, essentially each count relates to a

24    specific event, correct?  A specific assault?

25           MR. BUDLOW:  Yes, Your Honor.

1          THE COURT:  So what I'm trying to address in terms of

2    appellate review of this is in terms of the sentence imposed,

3    that we -- not so much the matter of stacking as to the

4    different categories, but in terms of within one category, I

5    believe that the position of the Government is that each one of

6    those should have the maximum penalty of 360 months or 30 years

7    and be stacked.  I mean, each one is a separate 30-year

8    offense.

9          MR. BUDLOW:  Yes, Your Honor.

10          THE COURT:  And so as to each offense there should be

11    a 30-year imprisonment?

12          MR. BUDLOW:  Yes.  That's correct.  Each incident

13    of --

14          THE COURT:  Now, what I want to clarify is that

15    clearly Counts 2 through 10, whether it's Counts 2, 3, 5, 7, 8,

16    9, and 10, those nine counts -- 1, 2, 3, 4, 5, 6, 7 -- that's

17    seven right there, 2, 3, 5, 7, 8, 9, 10, each one is a separate

18    incident of sexual exploitation of a child, okay, as a group.

19    And then Count 1 is conspiracy to commit sexual exploitation

20    which is separate and then Counts 11, 12, 13, 15, and 17,

21    distribution of child pornography that includes depiction of

22    some of these offenses, which obviously are very grotesque,

23    there it's 5 years to 20 years' imprisonment for each one of

24    those counts, correct?  That's the statutory range?

25          MR. BUDLOW:  Yes.

1        THE COURT:  It's the position of the Government that
2    the Government's requesting that there be a 20-year or a
3    240-month sentence as to Counts 11, 12, 13, 15, and 17 all
4    being consecutive to one another within the group.  That's the
5    position of the Government; is that correct?
6        MR. BUDLOW:  No, Your Honor.  The way the Government
7    is fashioning the 230 years, of course you can do it any way
8    you want with whatever number, is that the seven counts of
9    production would be 30 years each consecutive, and that there
10   would be one consecutive count of distribution, which is Count
11   11.
12       THE COURT:  That would include Count 11 --
13   essentially you would want concurrent -- your request is 360
14   months or 30 years' imprisonment consecutive as to the category
15   of Counts 2, 3, 5, 7, 8, 9, and 10; but as to Counts 11, 12,
16   13, 15, and 17 you're requesting a 20-year sentence or 240
17   months as to Count 11, as to Count 12, as to Count 13, as to
18   Count 15, and as to Count 17, all concurrent to one another and
19   those being consecutive.
20       MR. BUDLOW:  Yes.
21       THE COURT:  Okay.  And then finally, as to Counts 19,
22   20, and 21, possession of child pornography, that includes not
23   only the pornography produced by the defendant in connection
24   with the abuse of the infant victim here but other -- others
25   from the series, the Tara series and others, that would be the

1   statutory framework is not more than 20 years and you're

2   requesting a sentence of 20 years as to Counts 19, 20, and 21

3   to be concurrent to one another and then consecutive overall?

4            MR. BUDLOW:  Concurrent to one other and concurrent

5   overall.

6            THE COURT:  And concurrent to one another and

7   concurrent overall.

8            MR. BUDLOW:  Right.

9            THE COURT:  All right.  Well, I'm just trying to

10  clarify what your request is.  I have to -- it's very important

11  here, to put it bluntly, for purposes of the Fourth Circuit.

12  It's very important here in terms of review of the Fourth

13  Circuit in terms of the sentence imposed and how it's

14  structured is very important that my view is is that there is

15  some stacking to occur here but it is very important in terms

16  of not creating needless legal issues and a legal history of

17  this case over the matter of the propriety of stacking within

18  certain groups, and that's what I'm trying to address and

19  that's what's guiding the Court.

20       What we don't need is to have there be four years of

21  litigation over the appropriate sentence here over what's

22  stacked and what's not stacked and how is it, so I was trying

23  to clarify what your request is so that it's clear when I

24  impose a sentence how I structure it that the Fourth Circuit

25  will have a complete record.  So I think we're clear on that.

1   You basically asked for -- for the sentence on Counts 2, 3, 5,

2   7, 8, 9, and 10 all within that group all to be stacked

3   individually at the maximum of 30 years, in addition to the 30

4   years on Count 1, all consecutive, and then one sentence of 20

5   years or 240 months as to Counts 11, 12, 13, 15, and 17 to be

6   consecutive to those other sentences and then a sentence of 240

7   months or 20 years as to Counts 19, 20, and 21, all being

8   concurrent with those other sentences.  That's what the request

9   of the Government is.

10          MR. BUDLOW:  That is.  There's just one point of

11  clarification, which is the Government's view is that the first

12  210 years come from the substantive counts of sexual

13  exploitation as you've mentioned seven counts, 2, 3, 5, 7, 8,

14  9, and 10.  We didn't discuss necessarily what the Court would

15  do with Count 1, which is not necessary to get to that 210.

16          THE COURT:  No, no.  No, Count 1 is the conspiracy

17  count.  It is separate.

18          MR. BUDLOW:  Yes.

19          THE COURT:  I'm clear on that.  So I'm trying to make

20  sure I give the Government an opportunity to respond to how I'm

21  analyzing this.  Count 1 is separate from Counts 2, 3, 5, 7, 8,

22  9, and 10 in terms of the offense and in terms of any analysis

23  of stacking.  The issue I'm trying to address if there is some

24  juris prudence as to stacking with respect to the specific

25  offense so the stacking issue is addressed in the sexual

1    exploitation of a child Counts 2, 3, 5, 7, 8, 9, and 10, all

2    being each individual event is a separate event as to which the

3    Government is requesting there be stacking.  So I'm just trying

4    to clarify that.

5              MR. BUDLOW:  And the last just point I would add in

6    terms of what you were saying is that all of those seven counts

7    are on different dates and different conduct.

8              THE COURT:  I understand.

9              MR. BUDLOW:  Thank you, Your Honor.

10             THE COURT:  And the conspiracy charge is totally

11   separate.  That's not a matter of stacking within that

12   framework.  It's a conspiracy charge that covers all of that

13   conduct in terms of the conspiracy to commit that sexual --

14             MR. BUDLOW:  That's correct.

15             THE COURT:  -- exploitation.

16             MR. BUDLOW:  Thank you.

17             THE COURT:  Thank you.  Because the conspiracy charge

18   is conspiracy to commit sexual exploitation of a child.  That's

19   the charge at Count 1.

20             MR. BUDLOW:  Yes.

21             THE COURT:  All right.  Thank you, Mr. Budlow.  And

22   with that, Mr. Walsh-Little, I'll be glad to hear from you.  I

23   have read your sentencing memorandum, Paper Number 56, and have

24   reviewed the attachments thereto.  I'll be glad to hear from

25   you.

1        MR. WALSH-LITTLE:  Yes, Your Honor.  Thank you.  Just

2    initially, Your Honor, I'd make two specific recommendations on

3    behalf of Ms. McCroskey that you recommend sex offender

4    treatment while she's in Bureau of Prisons, number one; and

5    number two, you recommend that she be placed somewhere where

6    she can involve in programming in the culinary arts.  That's

7    something that she's interested in.

8        THE COURT:  In terms of vocational training, culinary

9    arts?

10        MR. WALSH-LITTLE:  Yes, Your Honor.

11        THE COURT:  All right.  Wait one second here.  With

12    that, I'll be glad to hear from you, Mr. Walsh-Little.

13        MR. WALSH-LITTLE:  Yes, Your Honor.  I'm asking you

14    to consider a very different sentence than what the Government

15    is asking.  I'm asking you to consider sentencing Ms. McCroskey

16    to 15 years in the Bureau of Prisons.  That's a substantially

17    long sentence.  It's three-fifths of her life.  She's never

18    been convicted of any crime and she has never been incarcerated

19    before until she was arrested in this case.

20        Section 3 of the Government's sentencing submission talks

21    about the effects of sexual exploitation and talks about how

22    horrible it is, and it is horrible, and I'd like to highlight a

23    couple points from the Government's submission, that sexual

24    exploitation leads to sexually inappropriate behavior on behalf

25    of victim.  It leads to a tendency toward being revictimized.

1    It leads to a connection between the sexual abuse and

2    depressive behavior and suicidal behavior.  It's often

3    connected to prostitution.  And maybe most relevantly for

4    sentencing of Ms. McCroskey, there's a link between the abuse

5    and later sexual maladjustment, all of that applies to the

6    victim in this case.  No one is defending the conduct here.  My

7    client admitted to the conduct at her guilty plea.  But I would

8    suggest to you, Your Honor, that those factors also apply to

9    Ms. McCroskey because she, too, was abused over and over again

10    during her childhood.

11        The Government mentions and cites a number of defendants

12    who've been sentenced who are also first offenders on cases

13    like this as analogous sentences.  I don't know what the

14    history and characteristics of any of those defendants are, but

15    I think when you look at Ms. McCroskey's history, it is --

16    suggests that she has had trauma from even before she was born

17    when she was in utero and subject to drugs that her mom was

18    taking at the time and that continued throughout her life.

19        We didn't submit any character letters because

20    Ms. McCroskey doesn't have any supportive family or friends to

21    reach out to and present to the Court.  And I would suggest

22    that when you look at her trauma, I can't find one relationship

23    that she's had, either as an -- when she was a child, as an

24    adult that was constructive and helpful and was a role model

25    and taught her good values and also as an adult.  She is very

1   much a product of that abuse.  That does not in any way limit

2   the choices that she made in this case.  I'm just saying it as

3   an explanation to how, which is, as the Court pointed out, how

4   does someone get to the point where they're not following the

5   appropriate parental instinct and in fact they're going

6   absolutely to the most horrendous conduct.

7       I would suggest, Your Honor, that occurs in part because

8   of the trauma that Ms. McCroskey herself has faced.  That

9   trauma mostly when she was younger was perpetrated by men,

10   mostly, and it affects her relationship with men.  And it was

11   also mostly trauma that was of a sexual nature.  And it causes,

12   as the Government argued, to maladjusted, wrong, morally

13   outrageous behavior in part in this case.

14       How does someone end up doing some of this conduct?  I

15   believe it is tied to Ms. McCroskey's trauma.  As I indicated,

16   she was subject to drugs when she was in her mother's womb.

17   Her mother it's clearly documented was an addict, was not there

18   for her.  She was a special needs student at school, struggled

19   with some of the mental diagnoses that were in the PSR.

20       Her stepfather sexually abused her at the age of three.  A

21   boyfriend of her grandmother's exposed himself to her at the

22   age of 10 or 11.  She herself was raped at age 14.  And soon

23   after that, she was exposed to a couple, a man and a woman, who

24   invited her into sexual conduct that included bondage,

25   sadomasochism at age 14.  That's all when she's in Texas.  Not

1    surprisingly, she drops out of school and flees.

2        She follows a man to Louisiana where she has a

3    relationship with that person and starts, as the PSR indicates,

4    prostituting herself to a local -- it's one of the armed

5    forces, I can't remember if it's a Navy base or an Army base.

6    Her entire, her entire sexual history is broken, maladjusted,

7    inappropriate.  I don't know if she's ever been exposed to a

8    normal or what, you know, the conduct should be.  It doesn't

9    excuse the conduct.  We are not excusing the conduct.  She pled

10   guilty and acknowledges the conduct.  The conduct is horrific,

11   but I think the Court should consider how she ends up there.

12       She is not -- we are not claiming duress or coercion from

13   Mr. Colby.  She has admitted the conduct.  What I was

14   suggesting in the memo was that if you look at the facts, she

15   meets Mr. Colby on a dating site, she's in California,

16   Mr. Colby is in Maryland, Mr. Colby is 10 years her senior, she

17   come to Maryland, she has no connections to Maryland, she

18   barely has a job in Maryland, and very much she doesn't have

19   the skills to appropriately interact in any of her

20   relationships, but I do think it's specific in part to men

21   based on her abuse.

22       And that does not excuse the choices that she made here.

23   We are not saying that she should have some kind of -- that

24   I've never argued duress or coercion.  It's just I do think

25   that explains part of the way that she interacts which is in

1    part the way that she was taught and all of the trauma that she

2    herself faced, and I ask the Court to consider that.

3         She's 25 years old.  She has no criminal history.  I do

4    believe she is remorseful.  I mean, she's certainly expressed

5    that to me.  She pled guilty.  We had to plead guilty to the

6    entire indictment, as the Court knows.  She didn't want a trial

7    in this case.  You know, she came in and admitted her conduct.

8    She knows that it's wrong and I do think she needs treatment.

9    I'm not saying that that replaces a prison sentence, but that

10   is a factor I think the Court should consider.

11        Additionally, Your Honor, and I won't -- she's now held in

12   the -- I forget the name of the jail now that the Marshals are

13   sending people in the middle of Virginia, that's where she

14   presently is, most of the time I've represented her she was at

15   the Harford County Detention Center.  She dropped out of high

16   school so she does not have a high school diploma.  She did

17   take whatever programming was available.  She brought me some

18   of her certificates.  I'll just for the Court's time just

19   summarize these.  It looks like a number of programming about

20   self-awareness and identity, self-esteem, a cognitive behavior

21   therapy, relapse prevention, unlocking your thinking, opening

22   your mind.

23        I'm not suggesting that, again, any way that excuses this

24   conduct, but I think it does show at least an interest on her

25   part to take advantage of the programming that is there.  I do

Sentencing *REDACTED* 5/18/23

1    think obviously she needs treatment.  The BOP provides that

2    treatment, and I'd ask the Court to consider all that and

3    consider a sentence that is substantial but much lower than

4    what the Government is asking for.  Thank you.

5            THE COURT:  Thank you very much, Mr. Walsh-Little.

6    And again, thank you for your taking this case as

7    Court-appointed counsel.

8        If you'll please stand, Ms. McCroskey.  I now personally

9    address you and give you an opportunity to speak on your own

10   behalf and determine if you wish to make a statement.  Would

11   you like to make a statement?

12           THE DEFENDANT:  Yes.

13           THE COURT:  If you will, on that, why don't you

14   just -- I want to make sure Ms. Longmore, the court reporter,

15   can hear you clearly.  You can keep your mask on and just speak

16   clearly into the microphone, please.

17           THE DEFENDANT:  Your Honor, I understand I have hurt

18   people.  I'm taking responsibility for my actions and I'm very

19   remorseful for what happened.  I get sad when I think about it.

20   I've started doing programs at Harford County in early January.

21   I've been attending bible study with the girls in central

22   Virginia jail and I'm getting therapy and I will continue to

23   seek therapy in prison.  I want to be a better person.  I would

24   like the opportunity to go back into society one day as a

25   better -- as a better person and a more educated person.

1        Thank you for listening.

2            THE COURT:   Thank you, Ms. McCroskey.   Give me one

3    second here.

4            (Pause in proceedings.)

5            THE COURT:   The facts of this case are shocking, to

6    say the least.   In my years as an experience here in this

7    Court, twice as a federal prosecutor, many years as a private

8    attorney, 20 years on the bench, I don't know that I've ever

9    been able to use this word before but this is depraved.

10   Depraved conduct.   I mean, this is just absolutely the most

11   horrific thing I have ever heard.   And I've thought long and

12   hard about this particularly since meeting with counsel looking

13   at the videotape on Monday.   And we've had some pretty nasty

14   people come through this courtroom, but this is just about the

15   bottom of the barrel ████████████████████████████████

16   ██████████████████████████████, it just shocks the

17   conscience.

18       Depraved doesn't even begin to approach.   Mental health

19   issues don't even begin to approach this.   Beating and abusing

20   a child, murdering a child doesn't begin to approach this.   And

21   it is so shocking that the Court -- the Court has to provide

22   the discipline to give it structure in terms of how does

23   society deal with something like this.   And it is easy just to

24   tally up the numbers and impose a sentence of 233 years and

25   that really -- that's more than a life-equivalent sentence.

1   The sentence here should be life equivalent.  You are a human

2   being.  You haven't acted like a human being.  You've acted in

3   some type of cannibalistic fashion.  But you still are a human

4   being in front of the Court and the Court cannot allow itself

5   to come into that depth of treating you like some kind of

6   animal, even though you treated another human being, ██████

7   █████, like some kind of animal.

8        And it's very important to note that we've conducted a

9   very careful analysis here in terms of the nature and

10   circumstances of this offense which are absolutely horrific.  I

11   mean, horrific.  That's the only word that can be used to

12   describe it.  It is horrific.  And it is my desire to make sure

13   that we don't get lost in all kind of legal technicalities and

14   drag out this whole pain for the system in terms of how the

15   sentence is structured.

16        So the record will reflect that my question to Mr. Budlow

17   earlier was as to the matter of how we deal with what's called

18   a stacking issue.  So the record is clear, the cases deal with

19   when there is an offense that's, to me, individually each

20   consecutive time whether you continue to stack it for each

21   time.  And the Court's have grappled with that.  The Supreme

22   Court continues to grapple with stacking in certain types of

23   cases.  It is my strong desire to bring closure to this and not

24   have there be an unnecessary stacking issue that raises its

25   head down the road, because this case, this case is so horrific

1   that it shouldn't even need to be addressed anymore by the

2   judicial system in terms of the appropriate sentence here, so

3   that is what I grapple with as well to try to structure

4   something that is appropriate and is in fact life equivalent.

5        With all due respect to Mr. Walsh-Little, who's an

6   excellent lawyer and has a great reputation before this Court,

7   a 15-year sentence would be positively absurd in this case.  It

8   doesn't begin to approach the gravity of it.  But I just can't

9   throw down 230 years and leave it at that and leave the

10  appellate courts trying to structure out perhaps what is more

11  temperate.

12       Mr. Budlow used the phrase life-equivalent sentence when

13  he started these proceedings, and I took note of that.  That's

14  what we're trying to structure here is a life-equivalent

15  sentence.  The guideline range is life.  And you are --

16  presently you are 25 years old and essentially this sentence is

17  going to amount to life.  There may be some light for you at

18  the end of the tunnel, possibly for good time credit many, many

19  years down the road.

20       (Conference at the bench.  It is the policy of this.
    Court that every guilty plea and sentencing proceeding include
21  a bench conference concerning whether the defendant is or is
    not cooperating.)
22

23       THE COURT:  So in structuring this sentence I've

24  tried to carefully do these calculations here and to avoid what

25  I think could be a potential stacking problem and come to the

1    following sentence.

2        First, as to the sentence for Count 1, conspiracy to

3    commit sexual exploitation of a child, the statutory maximum is

4    30 years imprisonment.  You shall receive the statutory maximum

5    of 30 years imprisonment, 360 months for a barbaric conspiracy

6    in which two adults seemed to take delight in the pain of a

7    child and the abuse of a child.  It's positively nauseating.

8        As to Count 2, the charge of sexual exploitation of a

9    child, the statutory framework a minimum of 15 years, 30 years

10   imprisonment.  The sentence will be 30 years imprisonment,

11   maximum, for 360 months.  And each specific incident is obscene

12   and nauseating, and God have mercy on your soul.

13       But in terms of stacking, Counts 2, 3, 5, 7, 8, 9, and 10

14   are all identically obscene conduct and the Court chooses not

15   to just keep adding them up 30 years each time.  That is the

16   area of stacking that creates danger for the court system and

17   creates potential unnecessary appellate issues.

18       So the sentence is 360 months on Count 2, Count 3, Count

19   5, Count 7, Count 8, Count 9, and Count 10 in terms of the

20   sexual exploitation of a child.  Those sentences in Counts 2,

21   3, 5, 7, 8, 9, and 10 are each 360 months.  They will run

22   concurrent to one another and consecutive to Count 1.  So it's

23   essentially 360 months on Count 1, and 360 months on Counts 2,

24   3, 5, 7, 8, 9, and 10, concurrent with one another and

25   consecutive to Count 1, which comes there to a total of 720

1     months.

2          And then we get to the category of the distribution of

3     child pornography, Counts 11, 12, 13, 15, and 17, and as

4     horrific as this crime is, to then utilize it in terms of

5     distributing child pornography and videotaping is just off the

6     charts.  Off the charts.  And the statutory maximum there is 20

7     years' imprisonment and you deserve 20 years' imprisonment

8     separately for that.  And it shall be 240 months as to Count

9     11, but the distribution charge as well as to Count 11, 12, 13,

10    15, and 17 are identical and to stack each one with each

11    distribution gets into an unnecessary stacking problem.

12         And as I've mentioned, stacking has been addressed by the

13    Fourth Circuit in a general context in United States versus

14    Chase at 296 F.3d 247, a Fourth Circuit opinion in which it did

15    approve stacking of grouped offenses to impose consecutive

16    sentences, and certiorari was denied by the Supreme Court in

17    2002 at 537 US 1023.  I don't need to get too deep in the weeds

18    on the matter of stacking, but I want to make sure the Fourth

19    Circuit is understanding the precautions I'm taking on this.

20         Those 240-month sentences, 20 years on each one of these

21    counts, 11, 12, 13, 15, and 17, shall be concurrent to one

22    another -- Mr. Carrick, I'll go over this very carefully --

23    they'll be concurrent to one another and they will be

24    consecutive to the 360 months on Count 1 and the 360-month

25    concurrent sentences on Counts 2, 3, 5, 7, 8, 9, and 10.  So

1    that come to a total of 960 months.

2         The sentences on Counts 19, 20, and 21 in terms of

3    possession of child pornography, it's anywhere from -- the

4    range of up to -- by statute up to 20 years' imprisonment.  The

5    sentences there shall be 5 years or 60 months on Counts 19,

6    Count 20, and 21.  They shall be concurrent to one another and

7    concurrent to all the other sentences I've just noted.

8         So according to my calculations, that comes to 960 months

9    which comes to exactly 80 years' imprisonment.  Is that a

10   correct calculation from the point of view of the Government,

11   Mr. Budlow, in terms of my number calculation?

12              MR. BUDLOW:  It is, Your Honor.

13              THE COURT:  I'm not asking you opine on it.  I'm just

14   asking have I done the arithmetic correctly.

15              MR. BUDLOW:  It is, and I may have missed it, I want

16   to clarify that the group relating to distribution is

17   consecutive not just to Count 1 but also consecutive to --

18              THE COURT:  Yes, it's consecutive to -- well, it

19   doesn't make a difference, but it's consecutive to all the

20   other counts above.

21              MR. BUDLOW:  Thank you.

22              THE COURT:  That's exactly right.

23         Have I done the arithmetic correctly, Mr. Walsh-Little?

24              MR. WALSH-LITTLE:  Yes, Your Honor.

25              THE COURT:  So it's a 960-month sentence which

1   translates out to 80 years.  You shall get credit for time

2   served in federal custody since June 23, 2022.  I shall also

3   recommend that you get credit for time served in state custody

4   from February 12, 2022 to June 22, 2022, pursuant to --

5   Mr. Carrick -- § 3585 of Title 18.  So that's a total sentence

6   of 80 years in prison with credit for time served going back to

7   June of last year.  I don't have jurisdiction to order credit

8   for time served in state custody but it's clearly the same

9   offense and under 18 United States Code § 3585(b) you shall get

10  credit for that as well.  So it essentially will work out to an

11  80-year sentence minus perhaps some year and four months or a

12  year and three months.

13      I'm going to recommend you get sex offender treatment.

14  I'm going to recommend that you get your GED.  I'm going to

15  recommend that you get vocational training in the culinary

16  arts.  I'm going to recommend you get psychological counseling

17  and mental health treatment counseling.  I'm going to recommend

18  that you participate in a drug abuse program for which you're

19  eligible.

20      In terms of the designation here, Mr. Budlow, the

21  designation that comes to mind automatically here for female

22  offenders is FCI Alderson in Alderson, West Virginia, but I'm a

23  little bit unclear in terms of the security level because that

24  security level is a minimum security level facility and I have

25  to take some time here on a recommendation here because I'm not

1    sure she's eligible to be at a minimum security facility with

2    the length of an 80-year sentence in this matter.  If the

3    Government has any other suggestions on that, I'll be glad to

4    hear from the Government and then from defense counsel, but I'm

5    initially going to recommend FCI Alderson but I'm actually

6    going to try to look into this quickly here right now.  I'm not

7    sure where else I can recommend.

8              MR. BUDLOW:  The Government has no position on the

9    designation.

10             THE COURT:  Thank you.  Mr. Walsh-Little, any other

11   recommendation as to designation?

12             MR. WALSH-LITTLE:  No, Your Honor.

13             THE COURT:  Give me one second here.  Let me check

14   one other matter before I continue.  If you'll remand standing,

15   please, Ms. McCroskey.  I'm going to recommend FCI Danbury

16   Connecticut, and the reason for it is that FCI Alderson, West

17   Virginia automatically is a minimum security facility.  In

18   light of the 80-year sentence that I've imposed, the Danbury

19   facility houses I believe both male and female populations and

20   it references there is an adjacent satellite prison that can

21   house low security female offenders and it's unclear to me --

22   I'm going to recommend FCI Danbury in Danbury, Connecticut or

23   alternatively any other facility housing female inmates, to

24   include but not be limited to FCI Alderson, West Virginia.  If

25   you'll make all those notes, Mr. Carrick, we'll deal with that

1    when we structure the Judgment and Commitment Order.

2        I recognize, Ms. McCroskey, your life has been almost a

3    continuous series of trauma, but -- and I certainly acknowledge

4    and recognize the abuse which you appear to have suffered as a

5    child, but -- ███████████████████████████████████

6    ███████████████████████████████████████████████████

7    ███████████████████████████████████████████████████

8    ████████████████████████████, but I've considered you to be

9    a threat to the community and I believe that you are in a rare

10   category of a serial child molester and you do represent a

11   threat to the community and you shall be treated as such.

12       I'm going to place you on supervised release for life and

13   there are mandatory conditions.  If there's any possible

14   supervised release as to which you're entitled, and I don't see

15   that you would ever be given supervised release, but to the

16   extent that that were to be considered for you, make sure we're

17   clear on this as well, I think probably the most consecutive

18   way to -- the most reasonable way to do this is the Court shall

19   impose a term of supervised release of 5 years to life as to

20   these various counts.  I'm going to impose a sentence of --

21   period of supervised release of 80 years on each one of these

22   counts, each one to run concurrent with one another for a

23   period of 80 years on supervised release with the following

24   terms of, first of all, the mandatory conditions.

25       You must not commit any other federal, state, or local

1    crime.  You must not unlawfully possess a controlled substance.

2    You must refrain from any unlawful use of a controlled

3    substance and must submit to a drug test upon your release if

4    you're ever released from prison.  I'm going to order that you

5    make restitution in the amount of $50,000.  Mr. Carrick, we'll

6    list that as $50,000 being paid by means of payment from the

7    prisoner relief fund, whatever the phrase there that's on the

8    Judgment and Commitment Order, and the restitution will be in

9    accordance with 18 United States Code § 3663.

10        You are to cooperate in the collection of DNA.  You are to

11   comply with the requirements of the Sex Offender Registration

12   and Notification Act.  That will be checked as well in that

13   category, Mr. Carrick.  And you're also to participate in any

14   approved program for domestic violence in the event that you're

15   released on supervised release.  They are the mandatory

16   conditions.

17        In terms of standard conditions, you must report to the

18   Probation Office in the federal judicial district where you are

19   authorized to reside within 72 hours of release if that were to

20   occur.  After initially reporting you will receive instructions

21   as to when and how to report.  You must not knowingly leave the

22   federal district where you are authorized to reside without

23   first getting permission.  You must answer truthfully all

24   questions asked of you by the probation officer.  You must live

25   in a place approved by the probation officer, all of which are

1    listed here in the Judgment and Commitment Order.  You must

2    allow the probation officer to visit you at any time.  You must

3    make every effort to work full-time.  You must not communicate

4    or interact with anyone that you know is engaged in criminal

5    activity.

6        If you're questioned by law enforcement, you must notify

7    your probation officer within 72 hours.  You're not to own,

8    possess, or have access to a firearm, ammunition, destructive

9    device.  You must not act or make any agreement with a law

10   enforcement agency to act as an informant.  If you're

11   determined to pose a risk to any other individual, you are to

12   abide by the instructions of the probation officer.  In short,

13   you are to follow the instructions of the probation officer

14   relating to conditions of supervised release if and ever you're

15   released on supervised release.

16       In addition to those mandatory and standard conditions,

17   you are to allow the probation officer to install computer

18   monitoring software on any computer that you use.  You must

19   submit your computers to any kind of check in terms of the

20   search of the use of it.  You must allow the probation officer

21   to conduct initial and periodic unannounced visits.  You must

22   warn any other people who have computers or devices capable of

23   accessing Internet that the devices may be subject to search

24   pursuant to this condition.  I'm going to require that you

25   participate in a substance abuse treatment program and a mental

Sentencing *REDACTED* 5/18/23

1    health program and any educational programs that are necessary

2    as well.

3         You are not to have any direct contact with any child that

4    you know or reasonably know to be under the age of 18.  You are

5    not to communicate in any way whatsoever with any victim of

6    this crime.  ████████████████████████████████████

7    ████████████████████████████████████████████████

8    ████████████████████████████████████████████████████

9    ████████████████████████████████████████████████

10   ████████████████████████████████████████████████████

11   ██████████████████████████████████████████████

12   ████████████████████████████████████████████████

13   ██████████████████████

14        You're not to view or possess any visual depictions of any

15   kind of sexually explicit conduct.  You're not to rent a post

16   office mailbox without the approval of the probation officer.

17   You are not to go near any areas where children under the age

18   of 18 are to be including parks or schools.  You are to

19   participate in any sex offender assessment that is deemed

20   necessary.  All those are conditions of supervised release if

21   you were to ever be released on supervised release in any way

22   in terms of serving your 80-year sentence in this case.

23        I want to advise you of your appeal rights.  Pursuant to

24   4(b) of the Federal Rules of Appellate Procedure, you have the

25   right to appeal your guilty plea in this case, as well as the

1  sentence imposed.  If you could not afford an attorney to

2  represent you, pursuant to 18 United States Code § 3006, an

3  attorney can be appointed to represent you.

4       Mr. Walsh-Little, you do not need to contact the Court,

5  but just make sure your own file reflects whether she does or

6  does not want to file an appeal and you may take the

7  appropriate steps thereby.

8            MR. WALSH-LITTLE:  Yes, Your Honor.

9            THE COURT:  Is there anything further from the point

10 of view of the Government, Mr. Budlow?

11           MR. BUDLOW:  A couple of matters, Your Honor.  I'm

12 not sure if you mentioned the special assessment with respect

13 to -- $100 with respect to each count.

14           THE COURT:  No, I did not.  I missed -- no, I'm

15 sorry.  That's correct.  It's $100 for each count.  I

16 overlooked that.  I apologize.  $100 for each count so

17 that's -- that will be again deducted from your prison wages,

18 and there are a total of 16 counts, so that's $1600 in special

19 assessment.  Anything else, Mr. Budlow?

20           MR. BUDLOW:  There's two other special assessments

21 that apply.  The first one is under 18 U.S.C. 3014 is a

22 mandatory $5,000 special assessment, unless the Court finds

23 that the defendant is indigent.

24           THE COURT:  She is indigent, and I'm not going to

25 assess that.  It's just creating unnecessary paperwork.

1      MR. BUDLOW:  Understood.  There's yet a third special

2  assessment that applies in child pornography production.

3      THE COURT:  I'm sorry, just a minute.  Well, she has

4  satisfied indigency because she been represented by

5  court-appointed counsel, so I will not assess that, that's

6  correct.

7      MR. BUDLOW:  Okay.  There's also another special

8  assessment under 18 United States Code 2259(a) that imposes a

9  mandatory $50,000 special assessment for each count of

10  production of child pornography.  That analysis is subject to

11  the Court's discretion under 3553(a) and the Government will

12  submit on that, but that is what the statute --

13      THE COURT:  Yeah, you didn't put that in your

14  sentencing memorandum so I overlooked it as well.  I'm not

15  going to assess that.  She's indigent.  There are no assets of

16  any kind.  I'm trying to make sure that to the extent that

17  restitution -- I don't want the restitution figure, Mr. Budlow,

18  to be jeopardized by an assessment figure.  So my goal is if

19  there are any funds it should go to restitution other than

20  being depleted for an assessment.  So that's my rationale here.

21  She's indigent and I'm not going to assess any further

22  assessments.  The $100 per count is statutorily required and

23  will be deducted from her prison wages, but that will be in

24  addition to her hopefully being able to get $50,000 in some

25  form from her.  Anything further on that?

1           MR. BUDLOW:  Understood, Your Honor.  The last point,

2    a little more substantive, as the Court has referenced the

3    Fourth Circuit and I've been back on resentencings multiple

4    times, I'm aware of certain relatively recent cases, Blue,

5    Slappy, US v. Ross, where cases have been reversed for the

6    Court not addressing nonfrivolous defense arguments in

7    mitigation, and I'm not indicating that the Court has, but I

8    thought that if the Court would be willing to invite the

9    defense to indicate whether or not the defense believes that

10   the Court did not address any of those nonfrivolous mitigation

11   arguments that Your Honor could make that record.

12           THE COURT:  Just hold on one second here.  You're

13   specifically referring to the -- again, you did not have this

14   in your sentencing memorandum, I don't believe, Mr. Budlow.  I

15   apologize that I didn't do any independent research on this but

16   I don't see your reference to Slappy anywhere in your very

17   exhaustive memo.  If I missed it, I apologize.  Did you refer

18   to Slappy in your memo?

19           MR. BUDLOW:  I did not, Your Honor.

20           THE COURT:  Okay.  That's all right.  I didn't

21   research it myself.  It would have been helpful -- if you're

22   going to raise that, it would be helpful if you'd let me know.

23   So we'll stop here for a minute.

24       872 F.3d at 207, you correctly note that the Fourth

25   Circuit dealt with the District Court's failure to address

1    defendant's nonfrivolous arguments in favor of a sentence

2    within the advisory guideline range or to explain why a maximum

3    statutory sentence was necessary was plainly unreasonable and

4    vacated and remanded for resentencing.

5        I've indicated that I've listened to what you had to say

6    about her abuse.  I understand the -- I've reviewed her

7    history.  It's not been documented but I quite frankly

8    considered it and I assumed that it was.  She does -- is a

9    victim, as Mr. Walsh-Little has noted, and that it begat this

10   horrible conduct on her part.  But it doesn't affect -- I have

11   considered it.  It still does not in any way drive me from the

12   sentence I've imposed.

13       Anything else you want to note on that, Mr. Walsh-Little?

14            MR. WALSH-LITTLE:  No, Your Honor.  There's one other

15   issue I wanted to raise whenever.

16            THE COURT:  You're certainly free to raise whatever

17   issues you want on appeal, which is fine.

18            MR. WALSH-LITTLE:  No, Your Honor, just from the

19   judgment.  The parties' agreement was that the restitution

20   amount was to be joint and several.  I would just ask that.

21            THE COURT:  Yes, it will be joint and several with

22   her codefendant yes, without question, her codefendant

23   Mr. Colby who has not yet been sentenced by me, and that is

24   joint and several.  Thank you for that, Mr. Walsh-Little.

25       And I would also note that the victim impact statement

1    here of the infant victim by representative of the infant

2    victim -- Mr. Carrick, this will be Court Exhibit 2, I believe,

3    and that will be included there in that.

4         Yes, Mr. Budlow, anything else further on this?

5              MR. BUDLOW:  Nothing further, Your Honor.  I would

6    ask that when the proceeding is over if counsel could approach

7    the bench momentarily on something unrelated.

8              THE COURT:  Both you and Mr. Walsh-Little?

9              MR. BUDLOW:  Yes, please.

10             THE COURT:  And Ms. McGuinn, that's fine.  Why don't

11   you come up before I adjourn for the day.  I do want to see the

12   Cecil County officials back in chambers come on up.  You're

13   welcome to come on up, and just put the noise machine on for a

14   minute here.  This is still on the record but it will be here.

15        (The following discussion occurred at sidebar:)

16             THE COURT:  I'm sorry, Paul.  I didn't see you

17   mention Slappy and I guess you're right, I have to make sure I

18   indicated that.  I just didn't see it.

19             MR. BUDLOW:  I don't typically reference it, but I

20   just had a case reversed.

21             THE COURT:  That's okay.  No, it just would help if

22   you had let me know ahead of time.  I could have made sure I

23   crossed that T and dotted that I, but I think I have.

24             MR. BUDLOW:  Thank you.  Your Honor, I actually

25   wanted to approach about your request to meet with the parties.

1    I just wanted to note that the other sentencing in this matter

2    for Mr. Colby, a lot these people will probably come back

3    again, I'm concerned that Ms. Banan is not here who represents

4    Mr. Colby to know of any potential objection.

5           THE COURT:  All right.  That's a point well taken.

6    Once this is over, once Mr. Colby's been sentenced, then I'll

7    meet with them.

8           MR. WALSH-LITTLE:  Is she in the back?

9           MR. BUDLOW:  Oh, I think she's in the back.

10          THE COURT:  That's fine.  I won't meet with them.

11   That's fine.  I'll meet with them after I've sentenced

12   Mr. Colby.

13      (End of sidebar discussion.)

14          THE COURT:  All right.  On the record, I note that

15   the Assistant Federal Public Defender Ms. Banan is here who

16   represents the codefendant, Mr. Colby.  Mr. Budlow has

17   suggested, I think that's correct that I won't meet with the

18   Cecil County officials and all the work that they've done in

19   this case until after Mr. Colby is sentenced.  And once

20   Mr. Colby has been sentenced, then I will be glad to meet with

21   the Cecil County officials in this matter.

22       And I think we've covered any concerns as to the Slappy

23   case as well.  I've done the best I can do to try to define the

24   sentence that I've imposed, which is obviously below what was

25   recommended by the Government and is certainly in excess of

1    what was recommended by the defense, but I think it has it
2    right in terms of how it's structured and it essentially is a
3    life-equivalent sentence but there is some possible light at
4    the end of the tunnel many, many years from now for this
5    defendant.
6           Anything else, Mr. Budlow, from your point of view?
7                 MR. BUDLOW:  No, Your Honor.  Thank you.
8                 THE COURT:  All right.  Mr. Budlow, Ms. McGuinn,
9    thank you very much for your work on this case.
10                MS. MCGUINN:  Thank you.
11                THE COURT:  And Agent Corn and Agent Gianforcaro,
12   thank you for your hard work on this case and, again, the Cecil
13   County officials as well, and I will see you all back here soon
14   on Mr. Colby's sentence.  What day is he being sentenced?
15                MR. BUDLOW:  August the 15th.
16                THE COURT:  In August, okay.  I'll see you back here
17   then.  Thank you all very much.  Anything else,
18   Mr. Walsh-Little, from your point of view?
19                MR. WALSH-LITTLE:  No, Your Honor.  Thank you.
20                THE COURT:  Court stands adjourned for the day.
21   Thank you all very much.
22                THE CLERK:  All rise.  This Honorable Court stands
23   adjourned.
24           (The proceedings concluded at 1:06 p.m.)
25

Sentencing *REDACTED* 5/18/23

1

2

3

4

5                         CERTIFICATE OF OFFICIAL REPORTER

6            I, Amanda L. Longmore, Registered Professional Reporter,
   in and for the United States District Court for the District of
7  Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that
   the foregoing is a true and correct transcript of the
8  stenographically-reported proceedings held in the
   above-entitled matter and that the transcript page format is in
9  conformance with the regulations of the Judicial Conference of
   the United States.

10
                            Dated this 19th day of June 2023
11                                -S-
                            _____
12                          AMANDA L. LONGMORE, RPR, FCRR
                            FEDERAL OFFICIAL COURT REPORTER
13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$100** [4] - 59:13, 15-16; 60:22
**$1600** [1] - 59:18
**$5,000** [1] - 59:22
**$50,000** [8] - 21:17, 22; 22:5, 13; 56:5; 60:9, 24

## 1

**1** [23] - 5:14; 6:11; 8:7; 10:11; 11:10, 13, 15; 21:16; 35:14, 17; 36:16, 19; 39:4, 15-16, 21; 40:19; 50:2, 22-23, 25; 51:24; 52:17
**10** [23] - 3:4; 5:14; 6:12; 10:12; 18:24; 21:16; 35:17, 19; 36:15-17; 37:15; 39:2, 14, 22; 40:1; 43:22; 44:16; 50:13, 19, 21, 24; 51:25
**1023** [1] - 51:17
**11** [15] - 5:15; 10:13; 18:20; 36:20; 37:3, 11-12, 15, 17; 39:5; 43:22; 51:3, 9, 21
**12** [12] - 5:15; 10:13; 18:20; 36:20; 37:3, 15, 17; 39:5; 51:3, 9, 21; 53:4
**13** [11] - 5:15; 10:13; 18:20; 36:20; 37:3, 16-17; 39:5; 51:3, 9, 21
**14** [3] - 18:17; 43:22, 25
**144** [1] - 25:23
**146** [1] - 25:23
**15** [15] - 5:15; 10:13; 18:20; 35:17, 20; 36:20; 37:3, 16, 18; 39:5; 41:16; 50:9; 51:3, 10, 21

## 15-minute [1] - 10:8

**15-minute** [1] - 10:8
**15-year** [1] - 49:7
**15th** [3] - 10:7; 11:9; 65:15
**16** [2] - 17:4; 59:18
**17** [11] - 5:16; 10:13; 18:20; 36:20; 37:3, 16, 18; 39:5; 51:3, 10, 21
**18** [10] - 13:3; 14:4; 53:5, 9; 56:9; 58:4, 18; 59:2, 21; 60:8
**19** [9] - 5:16; 10:18; 11:2; 18:21; 37:21; 38:2; 39:7; 52:2, 5
**1980s** [1] - 13:2
**19th** [1] - 66:10
**1:06** [1] - 65:24

## 2

**2** [22] - 5:14; 10:11; 18:23; 35:16, 19; 36:15-17; 37:15; 39:1, 13, 21; 40:1; 50:8, 13, 18, 20, 23; 51:25; 63:2
**20** [21] - 5:17; 10:18; 11:2; 17:24; 18:21; 35:10; 36:23; 37:22; 38:1; 39:4, 7; 47:8; 51:6, 20; 52:2, 4, 6
**20-year** [2] - 37:2, 16
**2002** [1] - 51:17
**2003** [2] - 16:11; 17:8
**2005** [1] - 12:20
**2007** [1] - 14:16
**2015** [1] - 17:25
**2021** [1] - 31:25
**2022** [3] - 53:2, 4
**2023** [1] - 66:10
**207** [1] - 61:24
**21** [9] - 5:17; 10:18; 11:2; 18:21; 37:22; 38:2; 39:7; 52:2, 6

## 210

**210** [2] - 39:12, 15
**22** [2] - 17:4; 53:4
**22-count** [2] - 2:7; 17:3
**2259(a** [1] - 60:8
**23** [1] - 53:2
**230** [7] - 27:14, 18; 33:7; 35:1; 37:7; 49:9
**233** [1] - 47:24
**240** [4] - 37:16; 39:5; 51:8
**240-month** [2] - 37:3; 51:20
**247** [1] - 51:14
**25** [2] - 45:3; 49:16
**28** [1] - 66:7
**296** [1] - 51:14
**2nd** [2] - 12:12; 17:2

## 3

**3** [19] - 5:14; 10:11; 18:24; 35:16, 19; 36:15-17; 37:15; 39:1, 13, 21; 40:1; 41:20; 50:13, 18, 21, 24; 51:25
**30** [11] - 16:18; 35:18, 20; 36:6; 37:9, 14; 39:3; 50:4, 9-10, 15
**30-year** [2] - 36:7, 11
**3006** [1] - 59:2
**3014** [1] - 59:21
**3553** [1] - 14:4
**3553(a** [2] - 33:8; 60:11
**3585** [1] - 53:5
**3585(b** [1] - 53:9
**360** [9] - 36:6; 37:13; 50:5, 11, 18, 21, 23; 51:24
**360-month** [1] - 51:24
**3663** [1] - 56:9

## 4

**4** [1] - 36:16
**4(b** [1] - 58:24
**40** [1] - 34:7
**43** [2] - 19:10, 17

## 5

**5** [21] - 5:14; 10:11; 18:24; 35:16, 19; 36:15-17, 23; 37:15; 39:1, 13, 21; 40:1; 50:13, 19, 21, 24; 51:25; 52:5; 55:19
**50** [1] - 34:7
**537** [1] - 51:17
**56** [1] - 40:23
**58** [1] - 19:3

## 6

**6** [2] - 15:25; 36:16
**60** [1] - 52:5
**63** [1] - 20:1
**67** [1] - 8:19

## 7

**7** [18] - 5:14; 10:11; 18:24; 35:16, 19; 36:15-17; 37:15; 39:2, 13, 21; 40:1; 50:13, 19, 21, 24; 51:25
**72** [2] - 56:19; 57:7
**720** [1] - 50:25
**753** [1] - 66:7

## 8

**8** [17] - 5:14; 10:11; 18:24; 35:17, 19; 36:15, 17; 37:15; 39:2, 13, 21; 40:1; 50:13, 19, 21, 24; 51:25
**80** [5] - 52:9; 53:1, 6; 55:21, 23
**80-year** [4] - 53:11; 54:2, 18; 58:22
**872** [1] - 61:24
**8th** [1] - 20:1

## 9

**9** [19] - 5:14; 10:11; 18:16;

---

21, 24; 35:17, 19; 36:16; 37:15; 39:2, 14, 22; 40:1; 50:13, 19, 21, 24; 51:25
**960** [2] - 52:1, 8
**960-month** [1] - 52:25

## A

**abide** [1] - 57:12
**able** [4] - 32:1, 3; 47:9; 60:24
**above-entitled** [1] - 66:8
**absent** [1] - 18:5
**absolutely** [3] - 43:6; 47:10; 48:10
**absurd** [1] - 49:7
**abuse** [28] - 10:9; 26:5; 27:8, 10; 28:7; 29:8, 13-14, 16, 23-25; 30:5, 24; 31:7; 34:21, 24; 37:24; 42:1, 4; 43:1; 44:21; 50:7; 53:18; 55:4; 57:25; 62:6
**abused** [2] - 42:9; 43:20
**abusing** [2] - 31:7; 47:19
**acceptance** [1] - 19:4
**accepted** [1] - 27:21
**access** [3] - 32:20; 33:15; 57:8
**accessing** [1] - 57:23
**accomplish** [1] - 27:16
**accordance** [1] - 56:9
**according** [1] - 52:8
**accordingly** [1] - 7:24
**account** [1] - 13:11
**achieve** [1] - 14:23
**acknowledge** [1] - 55:3

---

**acknowledges** [1] - 44:10
**Act** [6] - 13:2; 16:11, 13, 16; 18:14; 56:12
**act** [2] - 57:9
**acted** [2] - 48:2
**action** [1] - 33:6
**actions** [2] - 34:18; 46:18
**activity** [1] - 57:5
**acts** [4] - 27:13, 23; 30:25; 32:12
**actual** [1] - 26:5
**add** [1] - 40:5
**addict** [1] - 43:17
**adding** [1] - 50:15
**addition** [3] - 39:3; 57:16; 60:24
**additionally** [3] - 30:23; 34:1; 45:11
**address** [17] - 10:6; 15:2, 10; 19:20; 20:4; 23:10; 25:19; 28:18-20; 35:13; 36:1; 38:18; 39:23; 46:9; 61:10, 25
**addressed** [3] - 39:25; 49:1; 51:12
**addressing** [3] - 7:11; 25:23; 61:6
**adjacent** [1] - 54:20
**adjourn** [1] - 63:11
**adjourned** [2] - 65:20, 23
**adjustment** [1] - 19:3
**Administrative** [1] - 17:24
**administrative** [1] - 18:1
**admissions** [1] - 26:1
**admitted** [4] - 27:22; 42:7; 44:13; 45:7
**adult** [2] - 42:24
**adults** [1] - 50:6
**advantage** [1] - 45:25
**advise** [1] - 58:23
**advisory** [5] -

13:8; 14:20;
18:16; 62:2
**affect** [1] - 62:10
**affects** [1] - 43:10
**afford** [1] - 59:1
**afterwards** [1] -
25:16
**age** [8] - 33:13;
43:20, 22, 25;
58:4, 17
**agency** [1] - 57:10
**Agent** [3] - 25:12;
65:11
**Agents** [2] - 4:1
**agents** [1] - 25:11
**ago** [2] - 13:3;
35:11
**agreeable** [2] -
8:10, 12
**agreed** [2] -
21:17; 23:13
**agreeing** [1] -
27:22
**agreement** [8] -
12:15; 13:14;
16:24; 17:2;
19:9; 21:14;
57:9; 62:19
**ahead** [1] - 63:22
**Alderson** [5] -
53:22; 54:5, 16,
24
**alleged** [1] - 30:3
**allocution** [2] -
7:12; 15:1
**allow** [4] - 48:4;
57:2, 17, 20
**almost** [3] -
17:24; 31:1;
55:2
**alone** [1] - 33:3
**alternatively** [1] -
54:23
**AMANDA** [1] -
66:12
**Amanda** [1] - 66:6
**ammunition** [1] -
57:8
**amount** [5] - 6:19;
9:17; 49:17;
56:5; 62:20
**analogous** [1] -
42:13
**analysis** [4] -
35:7; 39:22;
48:9; 60:10
**analyzing** [1] -
39:21
**anguish** [1] -
34:15

**animal** [2] - 48:6
**answer** [2] -
34:25; 56:23
**antipsychotic** [1]
- 15:21
**anyway** [1] - 11:8
**apart** [1] - 14:21
**apologize** [3] -
59:16; 61:15, 17
**appeal** [6] - 13:15,
17; 58:23, 25;
59:6; 62:17
**appeals** [1] -
13:12
**appear** [1] - 55:4
**Appellate** [1] -
58:24
**appellate** [3] -
36:2; 49:10;
50:17
**applicable** [1] -
16:25
**applied** [1] - 13:8
**applies** [2] - 42:5;
60:2
**apply** [3] - 13:10;
42:8; 59:21
**appointed** [6] -
4:13, 19; 46:7;
59:3; 60:5
**appreciates** [1] -
27:21
**approach** [7] -
7:5; 47:18-20;
49:8; 63:6, 25
**appropriate** [12] -
13:16; 17:6;
23:11; 27:15;
29:20; 34:19;
35:2; 38:21;
43:5; 49:2, 4;
59:7
**appropriately** [1]
- 44:19
**approval** [1] -
58:16
**approve** [1] -
51:15
**approved** [2] -
56:14, 25
**approving** [1] -
35:11
**area** [1] - 50:16
**areas** [3] - 2:13,
17; 58:17
**argued** [2] -
43:12; 44:24
**argument** [2] -
25:4; 35:6
**arguments** [7] -

25:6, 25; 28:18,
20; 61:6, 11;
62:1
**arithmetic** [2] -
52:14, 23
**armed** [1] - 44:4
**Army** [1] - 44:5
**arrested** [1] -
41:19
**arts** [3] - 41:6, 9;
53:16
**assault** [1] - 35:24
**assess** [4] -
59:25; 60:5, 15,
21
**assessment** [9] -
58:19; 59:12,
19, 22; 60:2,
8-9, 18, 20
**assessments** [2] -
59:20; 60:22
**assets** [4] - 8:18;
22:8, 11; 60:15
**assistance** [1] -
16:22
**Assistant** [4] -
3:12, 16; 4:18;
64:15
**assisted** [1] -
20:18
**assumed** [1] -
62:8
**assumption** [1] -
21:21
**attachment** [1] -
30:18
**attachments** [1] -
40:24
**attending** [1] -
46:21
**attorney** [5] -
13:16; 15:6;
47:8; 59:1, 3
**Attorney** [2] -
3:12, 16
**Attorney's** [2] -
20:17, 23
**attracted** [2] -
29:2; 31:19
**attraction** [1] -
33:14
**August** [2] - 65:15
**authorities** [2] -
19:15
**authorized** [2] -
56:19, 22
**automatically** [2]
- 53:21; 54:17
**available** [1] -
45:17

**avoid** [1] - 49:24
**aware** [6] - 22:9;
27:17; 28:7;
29:6; 31:21;
61:4
**awareness** [1] -
45:20
**awful** [1] - 34:4

## B

**balance** [1] - 13:5
**Banan** [2] - 64:3,
15
**barbaric** [1] - 50:5
**barely** [1] - 44:18
**barrel** [1] - 47:15
**base** [3] - 18:19;
44:5
**based** [6] - 28:25;
32:11; 33:7, 10;
44:21
**batch** [2] - 6:4, 8
**bearing** [1] -
29:23
**beating** [1] -
47:19
**begat** [1] - 62:9
**begin** [4] -
47:18-20; 49:8
**beginning** [1] -
7:5
**behalf** [8] - 4:9,
11; 12:8; 19:24;
21:11; 41:3, 24;
46:10
**behavior** [5] -
41:24; 42:2;
43:13; 45:20
**believable** [1] -
30:11
**believes** [1] - 61:9
**below** [1] - 64:24
**bench** [4] - 47:8;
49:20; 63:7
**benefit** [1] - 21:23
**best** [1] - 64:23
**better** [3] - 46:23,
25
**between** [5] -
22:11; 23:9;
31:24; 42:1, 4
**bible** [1] - 46:21
**bit** [2] - 30:18;
53:23
**blame** [1] - 31:8
**blames** [1] - 30:8
**Blue** [1] - 61:4
**bluntly** [1] - 38:11
**bondage** [1] -

43:24
**Booker** [3] -
12:19; 13:3;
14:16
**boosted** [3] -
2:23; 3:1; 5:7
**BOP** [1] - 46:1
**born** [2] - 42:16
**bother** [1] - 29:8
**bottom** [1] - 47:15
**bound** [1] - 13:9
**box** [1] - 22:21
**boyfriend** [2] -
32:25; 43:21
**bragged** [1] - 29:3
**bring** [1] - 48:23
**broken** [1] - 44:6
**brought** [1] -
45:17
**BUDLOW** [74] -
3:11, 15; 5:20;
6:7, 15, 17; 7:1,
4, 16, 19; 8:5,
11; 9:2, 21;
10:15, 20, 23;
11:1, 4, 14, 19,
25; 13:23; 19:7;
20:3, 16; 21:1,
4, 7, 14, 24;
22:2, 8, 14, 24;
23:1, 13, 18;
25:3; 26:21;
30:17; 31:16;
35:25; 36:9, 12,
25; 37:6, 20;
38:4, 8; 39:10,
18; 40:5, 9, 14,
16, 20; 52:12,
15, 21; 54:8;
59:11, 20; 60:1,
7; 61:1, 19;
63:5, 9, 19, 24;
64:9; 65:7, 15
**Budlow** [36] -
3:12; 5:18; 6:6;
7:10, 12, 15;
8:2, 10, 25;
9:20; 10:14;
11:12; 12:1;
13:22; 19:4, 24;
20:2; 23:10;
25:5; 26:20;
31:15; 35:3;
40:21; 48:16;
49:12; 52:11;
53:20; 59:10,
19; 60:17;
61:14; 63:4;
64:16; 65:6, 8
**Bureau** [3] -

20:19; 41:4, 16
**BuSpar** [1] -
15:20

## C

**calculation** [6] -
14:20; 18:15,
22; 19:21; 52:10
**calculations** [2] -
49:24; 52:8
**California** [2] -
33:16; 44:15
**Cameron** [6] -
3:21; 7:24; 8:8;
9:11
**CAMERON** [2] -
3:23; 8:1
**cannibalistic** [1] -
48:3
**cannot** [2] - 34:8;
48:4
**capable** [1] -
57:22
**care** [2] - 21:21;
34:17
**careful** [1] - 48:9
**carefully** [2] -
49:24; 51:22
**Carrick** [12] - 7:9,
22; 8:7; 16:22;
22:21; 25:7;
51:22; 53:5;
54:25; 56:5, 13;
63:2
**case** [56] - 2:5;
4:13, 20; 6:16;
7:14; 8:9, 16,
25; 9:10; 10:10;
11:7; 12:19;
13:3, 13, 18;
14:14, 16;
16:24; 17:3;
19:1, 13-14, 20;
20:8, 13; 21:2;
27:2, 15, 25;
29:5; 31:10;
33:9, 11, 23;
34:11, 14;
38:17; 41:19;
42:6; 43:2, 13;
45:7; 46:6; 47:5;
48:25; 49:7;
58:22, 25;
63:20; 64:19,
23; 65:9, 12
**cases** [9] - 14:12;
16:15; 25:13;
34:8; 42:12;
48:18, 23; 61:4

caseworkers [1] - 20:7
categories [1] - 36:4
Category [1] - 19:18
category [5] - 36:4; 37:14; 51:2; 55:10; 56:13
caused [2] - 3:5; 30:5
causes [1] - 43:11
Cecil [14] - 8:23; 20:6, 11, 15, 17, 24; 21:22; 25:8, 14; 63:12; 64:18, 21; 65:12
Center [1] - 45:15
central [1] - 46:21
certain [8] - 8:3, 18, 24; 15:12; 16:18; 38:18; 48:22; 61:4
certainly [6] - 4:21; 35:5; 45:4; 55:3; 62:16; 64:25
CERTIFICATE [1] - 66:5
certificates [1] - 45:18
certify [1] - 66:7
certiorari [2] - 35:10; 51:16
chain [1] - 6:1
chambers [4] - 25:9, 16, 19; 63:12
character [1] - 42:19
Characteristics [2] - 17:15, 23
characteristics [2] - 14:5; 42:14
charge [6] - 40:10, 12, 17, 19; 50:8; 51:9
charged [2] - 17:4; 18:24
charges [2] - 10:12; 18:25
charging [1] - 2:7
charts [1] - 51:6
Chase [2] - 35:9; 51:14
check [3] - 3:1; 54:13; 57:19
checked [2] - 22:22; 56:12

Chief [2] - 16:16; 17:8
child [42] - 2:8; 5:13, 15-16; 6:1, 5; 9:24; 10:18; 18:20, 23; 28:7, 9; 29:3; 30:5; 33:15; 34:12, 14; 35:15, 19, 22; 36:18, 21; 37:22; 40:1, 18; 42:23; 47:20; 50:3, 7, 9, 20; 51:3, 5; 52:3; 55:5, 10; 58:3; 60:2, 10
childhood [2] - 29:12; 42:10
children [5] - 29:3; 30:12; 31:19; 33:14; 58:17
choice [1] - 27:7
choices [2] - 43:2; 44:22
chooses [1] - 50:14
chose [1] - 18:3
Circuit [10] - 35:9; 38:11, 13, 24; 51:13, 19; 61:3, 25
circumstances [2] - 14:6; 48:10
cites [1] - 42:11
claim [1] - 29:20
claimed [1] - 29:16
claiming [1] - 44:12
claims [4] - 29:10, 19; 30:6, 10
clarification [1] - 39:11
clarify [9] - 5:21; 10:21; 15:12; 22:12; 36:14; 38:10, 23; 40:4; 52:16
Claritin [1] - 15:20
clear [8] - 18:10; 27:24; 33:5; 38:23, 25; 39:19; 48:18; 55:17
clearly [12] - 5:12, 18; 23:10; 28:3, 15; 29:16, 24; 36:15; 43:17;

46:15; 53:8
clerk [2] - 16:23; 21:19
CLERK [1] - 65:22
client [1] - 42:7
closure [1] - 48:23
co [1] - 27:4
co-counsel [1] - 27:4
cock [2] - 32:9, 15
Code [5] - 14:4; 53:9; 56:9; 59:2; 60:8
codefendant [7] - 28:16; 30:8; 31:25; 32:10; 62:22; 64:16
coercion [3] - 31:2; 44:12, 24
cognitive [1] - 45:20
Colby [15] - 2:9; 22:11; 23:9; 33:22; 44:13, 15-16; 62:23; 64:2, 4, 12, 16, 19
Colby's [2] - 64:6; 65:14
collection [1] - 56:10
Colleen [1] - 3:17
combination [1] - 29:21
comments [1] - 30:25
Commission [5] - 16:19; 17:6, 10; 18:4
commit [7] - 2:7; 35:15; 36:19; 40:13, 18; 50:3; 55:25
Commitment [4] - 16:21; 55:1; 56:8; 57:1
committing [1] - 33:19
common [1] - 31:9
communicate [2] - 57:3; 58:5
community [2] - 55:9, 11
compare [1] - 34:8
competent [1] - 16:7
complete [2] -

31:18; 38:25
complex [1] - 19:1
complied [1] - 18:14
comply [1] - 56:11
computer [3] - 8:19; 57:17
computers [2] - 57:19, 22
concerned [1] - 64:3
concerning [1] - 49:21
concerns [2] - 29:25; 64:22
concluded [1] - 65:24
conclusion [1] - 8:8
concurrent [16] - 37:13, 18; 38:3, 6-7; 39:8; 50:22, 24; 51:21, 23, 25; 52:6; 55:22
condition [1] - 57:24
conditions [7] - 55:13, 24; 56:16; 57:14, 16; 58:20
conduct [36] - 27:2, 5, 12, 23; 29:17, 22; 30:2, 10; 31:9, 22; 33:10, 20, 25; 34:3, 12; 40:7, 13; 42:6; 43:6, 14, 24; 44:8-10, 13; 45:7, 24; 47:10; 50:14; 57:21; 58:15; 62:10
conducted [1] - 48:8
Conference [2] - 49:20; 66:9
conference [1] - 49:21
confession [1] - 28:2
confidential [2] - 17:16; 18:1
confirm [1] - 5:9
confirming [1] - 6:3
conformance [1] - 66:9

Congress [1] - 16:12
connected [1] - 42:3
Connecticut [2] - 54:16, 22
connection [2] - 37:23; 42:1
connections [1] - 44:17
conscience [1] - 47:17
consecutive [19] - 35:12; 37:4, 9-10, 14, 19; 38:3; 39:4, 6; 48:20; 50:22, 25; 51:15, 24; 52:17-19; 55:17
consequence [1] - 33:6
consequences [2] - 27:14; 34:17
consider [8] - 34:10; 41:14; 44:11; 45:2, 10; 46:2
considerable [1] - 6:19
consideration [1] - 14:21
considered [4] - 55:8, 16; 62:8, 11
considering [1] - 14:3
conspiracy [12] - 2:7; 35:14, 21; 36:19; 39:16; 40:10, 12-13, 17-18; 50:2, 5
constitutional [1] - 13:6
constitutionality [2] - 12:21, 23
constructive [1] - 42:24
consult [1] - 13:10
contact [4] - 21:18; 22:4; 58:3; 59:4
containing [2] - 17:16, 25
contains [1] - 11:19
contemplating [1] - 28:5
context [3] - 13:9;

23:11; 51:13
continue [5] - 32:23; 33:20; 46:22; 48:20; 54:14
continued [1] - 42:18
continues [2] - 2:19; 48:22
continuous [1] - 55:3
contraband [1] - 11:19
contradictory [1] - 31:9
controlled [2] - 56:1
conversation [1] - 33:4
convicted [1] - 41:18
convictions [1] - 19:12
cooperate [1] - 56:10
cooperating [1] - 49:21
coordinate [1] - 8:7
copy [4] - 7:1, 6; 16:24; 17:2
Corn [3] - 4:1; 25:12; 65:11
CORN [1] - 4:6
correct [23] - 3:14; 5:18; 6:5, 17; 7:7, 14, 25; 9:2, 20-21; 11:4; 13:24; 21:23; 35:24; 36:12, 24; 37:5; 40:14; 52:10; 59:15; 60:6; 64:17; 66:7
corrections [4] - 9:19, 23; 10:3, 6
correctly [5] - 4:2; 13:21; 52:14, 23; 61:24
counsel [13] - 2:23; 3:9; 4:19; 10:8; 18:18; 19:23; 27:4; 46:7; 47:12; 54:4; 60:5; 63:6
counseling [3] - 29:21; 53:16
Count [33] - 10:11; 35:14, 17; 36:19;

Sentencing *REDACTED* 5/18/23

37:10, 12,
17-18; 39:4,
15-16, 21;
40:19; 50:2, 8,
18-19, 22-23,
25; 51:8, 24;
52:6, 17
**count** [10] - 6:14;
35:21, 23;
37:10; 39:17;
59:13, 15-16;
60:9, 22
**Counts** [32] -
5:14-16; 6:11;
10:11, 13, 18;
18:20, 24;
21:16; 35:16,
19; 36:15, 20;
37:3, 15, 21;
38:2; 39:1, 5, 7,
21; 40:1; 50:13,
20, 23; 51:3, 25;
52:2, 5
**counts** [20] - 5:23;
10:24; 11:8;
17:4; 21:6, 15;
31:5; 36:16, 24;
37:8; 39:12;
40:6; 51:21;
52:20; 55:20,
22; 59:18
**County** [16] -
8:23; 20:6, 11,
15, 17-18, 24;
21:22; 25:8, 14;
45:15; 46:20;
63:12; 64:18,
21; 65:13
**couple** [4] - 20:4;
41:23; 43:23;
59:11
**course** [2] -
22:17; 37:7
**Court** [58] - 2:3;
4:16; 8:7; 12:9,
16, 20, 23; 13:3,
6; 14:14, 17;
15:2; 18:2; 20:5;
21:7; 22:1; 27:3,
11; 28:7, 25;
31:16; 32:17;
33:11; 34:6;
38:19; 39:14;
42:21; 43:3;
44:11; 45:2, 6,
10; 46:2, 7;
47:7, 21; 48:4,
22; 49:6; 50:14;
51:16; 55:18;
59:4, 22; 61:2,

6-8, 10; 63:2;
65:20, 22; 66:6
**COURT** [127] -
2:4; 3:13, 16,
20, 24; 4:4, 7,
12, 15, 24; 5:1,
21; 6:13, 16, 18;
7:2, 6, 9, 17, 20;
8:2, 6, 12, 14;
9:4, 13, 16, 19,
22; 10:2, 5, 16,
21, 25; 11:2, 5,
16, 22; 12:1, 7,
11; 13:21, 24;
14:2; 15:5, 9,
15, 19, 23; 16:1,
3, 6, 10; 18:8,
13; 19:8; 20:10,
20; 21:3, 5, 12,
20, 25; 22:5, 10,
20, 25; 23:7, 15;
25:5, 21; 26:2,
6, 12, 19; 30:15;
31:14; 35:3;
36:1, 10, 14;
37:1, 12, 21;
38:6, 9; 39:16,
19; 40:8, 10, 15,
17, 21; 41:8, 11;
46:5, 13; 47:2,
5; 49:23; 52:13,
18, 22, 25;
54:10, 13; 59:9,
14, 24; 60:3, 13;
61:12, 20;
62:16, 21; 63:8,
10, 16, 21; 64:5,
10, 14; 65:8, 11,
16, 20; 66:12
**court** [15] - 2:12;
4:13, 19; 11:20;
16:17; 17:8, 14;
18:3, 6; 25:15;
46:14; 49:20;
56:10; 60:5
**Court's** [5] - 34:1;
45:18; 48:21;
60:11; 61:25
**court's** [1] - 10:20
**Court-appointed**
[1] - 46:7
**court-appointed**
[2] - 4:19; 60:5
**courtesy** [1] -
25:15
**courthouse** [4] -
2:14, 17, 20; 3:5
**courtroom** [9] -
2:15, 18, 22;
3:7; 16:23; 20:6;

23:17; 25:12;
47:14
**courts** [5] - 12:17;
13:12; 16:14;
49:10
**covered** [1] -
64:22
**covers** [1] - 40:12
**creates** [1] - 50:16
**creating** [2] -
38:16; 59:25
**credit** [6] - 49:18;
53:1, 3, 6-7, 10
**crime** [5] - 28:8;
41:18; 51:4;
56:1; 58:6
**Criminal** [2] - 2:5;
19:17
**criminal** [7] -
16:15; 19:12;
27:3; 30:2; 45:3;
57:4
**crossed** [1] -
63:23
**culinary** [3] -
41:6, 8; 53:15
**cum** [1] - 32:24
**current** [1] - 29:17
**custody** [1] -
53:2, 8

# D

**Danbury** [4] -
54:15, 18, 22
**danger** [2] -
33:15; 50:16
**dangerousness**
[1] - 29:25
**Dated** [1] - 66:10
**dates** [1] - 40:7
**dating** [2] - 17:24;
44:15
**David** [1] - 4:10
**days** [2] - 3:5;
16:18
**deal** [4] - 47:23;
48:17; 54:25
**dealt** [1] - 61:25
**December** [1] -
14:15
**decide** [1] - 31:13
**decided** [1] -
14:15
**deducted** [2] -
59:17; 60:23
**deemed** [1] -
58:19
**deep** [2] - 25:6;
51:17

**defendant** [23] -
2:6; 4:9; 26:23;
27:19, 21; 28:5,
9, 22; 29:10;
30:1, 7; 31:6;
32:12, 14, 22;
33:9, 15; 34:9,
20; 37:23;
49:21; 59:23;
65:5
**DEFENDANT** [18]
- 4:23, 25; 9:12,
15, 18; 13:20;
15:4, 8, 14, 18,
20, 25; 16:2, 5;
18:7, 12; 46:12,
17
**Defendant** [2] -
17:15, 22
**defendant's** [8] -
27:2, 6; 28:3;
29:17; 34:12,
15, 18; 62:1
**defendants** [6] -
2:6; 22:17;
32:20; 33:13;
42:11, 14
**Defender** [2] -
4:18; 64:15
**defending** [1] -
42:6
**defense** [7] -
28:18, 20; 54:4;
61:6, 9; 65:1
**define** [1] - 64:23
**definitely** [1] -
32:11
**deletion** [1] -
12:24; 13:4, 7
**delight** [1] - 50:6
**demonstrates** [1]
- 27:13
**denied** [2] -
35:10; 51:16
**Department** [2] -
8:23; 20:7
**depiction** [3] -
10:9; 11:6;
36:21
**depictions** [1] -
58:14
**depleted** [1] -
60:20
**depraved** [3] -
47:9, 18
**depression** [1] -
15:11
**depressive** [1] -
42:2
**depth** [1] - 48:5

**deputy** [1] - 16:23
**derived** [1] - 27:7
**describe** [1] -
48:12
**deserve** [1] - 51:7
**designation** [4] -
53:20; 54:9, 11
**desire** [4] - 4:8;
30:9; 48:12, 23
**despite** [1] -
27:19
**destructive** [1] -
57:8
**detail** [1] - 30:14
**Detention** [1] -
45:15
**determine** [1] -
46:10
**determined** [1] -
57:11
**deterred** [2] -
33:9, 21
**device** [2] - 32:19;
57:9
**devices** [4] - 6:10;
11:1; 57:22
**diagnoses** [1] -
43:19
**difference** [1] -
52:19
**different** [5] -
20:22; 36:4;
40:7; 41:14
**difficult** [2] -
20:13; 29:12
**difficulty** [1] -
14:11
**diploma** [1] -
45:16
**direct** [1] - 58:3
**directed** [1] - 17:8
**discipline** [1] -
47:22
**disclosing** [1] -
8:22
**discretion** [3] -
2:14, 18; 60:11
**discuss** [1] -
39:14
**discussed** [2] -
9:14; 15:5
**discussion** [2] -
63:15; 64:13
**dispute** [1] -
23:19
**disputed** [1] -
19:20
**disseminated** [1]
- 34:21
**distributed** [2] -

6:9; 21:23
**distributing** [1] -
51:5
**distribution** [10] -
5:15; 6:5; 10:13;
18:20; 36:21;
37:10; 51:2, 9,
11; 52:16
**district** [2] -
56:18, 22
**District** [3] -
61:25; 66:6
**DNA** [1] - 56:10
**documented** [5] -
29:13-15; 43:17;
62:7
**documents** [5] -
9:3; 16:19; 17:9,
11
**domestic** [1] -
56:14
**done** [6] - 11:20;
34:9; 52:14, 23;
64:18, 23
**dotted** [1] - 63:23
**down** [7] - 3:6;
5:9; 9:5; 34:7;
48:25; 49:9, 19
**downward** [1] -
19:3
**drag** [1] - 48:14
**drive** [1] - 62:11
**dropped** [1] -
45:15
**drops** [1] - 44:1
**drug** [3] - 32:24;
53:18; 56:3
**drugs** [2] - 42:17;
43:16
**due** [2] - 22:15;
49:5
**duress** [2] -
44:12, 24
**during** [4] - 5:5;
7:11; 27:10;
42:10

# E

**early** [2] - 27:19;
46:20
**easy** [3] - 32:21;
34:25; 47:23
**educated** [1] -
46:25
**educational** [1] -
58:1
**effect** [4] - 16:3;
26:9; 34:7
**effectively** [1] -

13:8
**effects** [1] - 41:21
**effort** [2] - 7:13;
57:3
**efforts** [1] - 25:14
**egged** [1] - 28:16
**either** [6] - 6:4;
18:18; 21:21;
22:17; 32:3;
42:23
**eligible** [2] -
53:19; 54:1
**emotional** [1] -
34:13
**empathetic** [1] -
30:4
**encourage** [1] -
29:20
**encouraged** [1] -
28:15
**end** [7] - 7:4; 25:6,
22; 43:14;
49:18; 64:13;
65:4
**ends** [1] - 44:11
**endured** [1] -
34:16
**enforcement** [3] -
26:1; 57:6, 10
**engaged** [4] -
30:10, 19, 21;
57:4
**enjoyable** [1] -
32:9
**enjoying** [2] -
31:3, 20
**ensure** [1] - 16:17
**entire** [3] - 44:6;
45:6
**entitled** [2] -
55:14; 66:8
**equally** [1] - 30:21
**equipment** [1] -
8:19
**equivalent** [10] -
26:24; 27:18;
35:5, 7; 47:25;
48:1; 49:4, 12,
14; 65:3
**essentially** [13] -
7:12; 12:15;
18:21; 19:14,
19; 21:20;
35:14, 23;
37:13; 49:16;
50:23; 53:10;
65:2
**esteem** [1] - 45:20
**event** [7] - 2:19,
21; 3:4; 35:24;

40:2; 56:14
**eventually** [1] -
27:22
**evidence** [6] -
11:21; 26:7;
27:25; 28:25;
30:11; 31:10
**exactly** [3] -
28:17; 52:9, 22
**excellent** [1] -
49:6
**exception** [2] -
2:14; 6:7
**excess** [1] - 64:25
**exchange** [1] -
32:22
**excuse** [3] -
29:17; 44:9, 22
**excuses** [1] -
45:23
**excusing** [2] -
30:2; 44:9
**exhaustive** [1] -
61:17
**exhibit** [1] - 11:12
**Exhibit** [5] - 8:7;
11:10, 13, 15;
63:2
**existed** [2] - 33:3,
24
**experience** [1] -
47:6
**experienced** [1] -
29:19
**explain** [1] - 62:2
**explains** [1] -
44:25
**explanation** [1] -
43:3
**explicit** [1] - 58:15
**explicitly** [1] -
30:7
**exploitation** [18] -
2:8; 18:23;
35:15, 19, 22;
36:18; 39:13;
40:1, 15, 18;
41:21, 24; 50:3,
8, 20
**exploiting** [1] -
31:6
**exploitive** [1] -
29:17
**exposed** [3] -
43:21, 23; 44:7
**expressed** [1] -
45:4
**expression** [1] -
28:24
**extend** [1] - 20:14

**extent** [6] - 11:6;
18:13; 23:16;
29:23; 55:16;
60:16
**extreme** [2] -
27:13

## F

**F.3d** [2] - 51:14;
61:24
**faced** [2] - 43:8;
45:2
**facility** [5] - 53:24;
54:1, 17, 19, 23
**fact** [5] - 27:19,
21; 29:5; 43:5;
49:4
**factor** [1] - 45:10
**factors** [8] - 14:2,
4-5, 7, 21; 33:8;
42:8
**facts** [3] - 29:6;
44:14; 47:5
**failure** [1] - 61:25
**fairly** [2] - 8:3;
27:19
**familial** [1] - 23:8
**family** [4] - 12:4;
17:17; 18:1;
42:20
**far** [3] - 25:12;
29:18
**fashion** [1] - 48:3
**fashioning** [1] -
37:7
**favor** [1] - 62:1
**FBI** [4] - 3:25;
11:21; 19:15;
25:11
**FCI** [6] - 53:22;
54:5, 15-16, 22,
24
**FCRR** [1] - 66:12
**February** [3] -
12:12; 17:2;
53:4
**Federal** [10] -
4:18; 12:21, 23;
13:5, 7; 15:6;
19:1; 20:19;
58:24; 64:15
**FEDERAL** [1] -
66:12
**federal** [14] -
12:17; 13:9;
14:17; 16:14,
17; 19:15;
20:22; 47:7;
53:2; 55:25;

56:18, 22
**female** [4] - 53:21;
54:19, 21, 23
**few** [8] - 3:5;
14:25; 15:9;
28:18, 21;
31:14; 32:23;
35:4
**fifths** [1] - 41:17
**figure** [2] - 60:17
**file** [2] - 59:5
**filed** [1] - 20:1
**filings** [1] - 8:22
**finally** [2] - 32:1;
37:21
**fine** [12] - 11:5,
22-23; 22:5, 20;
23:7, 15; 26:19;
62:17; 63:10;
64:10
**finish** [1] - 25:9
**firearm** [1] - 57:8
**first** [15] - 12:19;
14:19; 15:10;
18:15; 19:23;
20:4; 33:8, 23;
35:21; 39:11;
42:12; 50:2;
55:24; 56:23;
59:21
**five** [1] - 9:15
**flees** [1] - 44:1
**follow** [1] - 57:13
**following** [4] -
43:4; 50:1;
55:23; 63:15
**follows** [1] - 44:2
**forces** [1] - 44:5
**foregoing** [1] -
66:7
**forfeiture** [2] -
8:16
**forget** [1] - 45:12
**form** [1] - 60:25
**format** [1] - 66:8
**former** [1] - 4:17
**forth** [1] - 18:16
**forward** [3] - 17:9;
28:15; 30:20
**forwarded** [1] -
21:8
**foster** [1] - 21:21
**four** [3] - 9:15;
38:20; 53:11
**Fourth** [10] - 35:9;
38:11, 24;
51:13, 18; 61:3,
24
**framework** [5] -
35:17, 20; 38:1;

40:12; 50:9
**frankly** [1] - 62:7
**freaking** [1] -
32:13
**free** [3] - 13:15;
27:6; 62:16
**Friday** [1] - 2:20
**friends** [1] - 42:20
**front** [1] - 48:4
**fuck** [1] - 32:25
**fucked** [1] - 32:25
**full** [2] - 22:7; 57:3
**full-time** [1] - 57:3
**fully** [12] - 2:22;
3:1, 13, 17, 22;
4:4, 24; 5:7, 11;
23:11; 29:6;
31:21
**fund** [1] - 56:7
**funds** [1] - 60:19
**future** [1] - 29:25

## G

**Gall** [1] - 14:15
**GED** [1] - 53:14
**general** [3] - 15:3;
28:7; 51:13
**GIANFORCARO**
[2] - 4:3, 5
**Gianforcaro** [3] -
4:1; 65:11
**giggling** [1] -
30:24
**girls** [1] - 46:21
**given** [1] - 55:15
**glad** [7] - 20:2;
25:8; 40:22, 24;
41:12; 54:3;
64:20
**glee** [1] - 30:20
**goal** [2] - 14:22;
60:18
**goals** [1] - 14:23
**God** [1] - 50:12
**Government** [35]
- 9:20; 11:10,
13-14; 13:14,
22; 14:25;
18:18; 19:5, 24;
22:9; 23:5;
25:25; 26:7;
27:17, 21; 28:4;
36:5; 37:1, 5-6;
39:9, 20; 40:3;
41:14; 42:11;
43:12; 46:4;
52:10; 54:3, 8;
59:10; 60:11;
64:25

**Government's** [9]
- 19:25; 25:4;
26:24; 27:15,
23; 37:2; 39:11;
41:20, 23
**grandmother's**
[1] - 43:21
**granted** [2] - 19:8
**grapple** [2] -
48:22; 49:3
**grappled** [1] -
48:21
**gratification** [2] -
30:12; 31:8
**gravity** [1] - 49:8
**great** [1] - 49:8
**greater** [1] - 14:23
**grotesque** [1] -
36:22
**Group** [1] - 18:23
**group** [5] - 36:18;
37:4; 39:2;
52:16
**grouped** [2] -
35:11; 51:15
**grouping** [2] -
18:25; 19:2
**groups** [2] - 35:8;
38:18
**guess** [1] - 63:17
**guideline** [6] -
14:18, 20;
18:16; 19:10,
18-19; 49:15;
62:2
**Guidelines** [6] -
12:21, 24; 13:6;
15:6; 19:2
**guidelines** [8] -
12:25; 13:1, 5,
10; 14:3, 22;
23:19
**guiding** [1] -
38:19
**guilty** [14] - 2:10;
12:12, 14-15;
13:13; 17:1;
27:20; 42:7;
44:10; 45:5;
49:20; 58:25

## H

**hand** [1] - 5:8
**handed** [1] - 34:7
**handled** [1] -
11:23
**hands** [2] - 3:2;
5:9
**hard** [4] - 23:10;

31:12; 47:12;
65:12
**Harford** [2] -
45:15; 46:20
**harm** [1] - 30:5
**harsh** [2] - 13:18;
30:3
**head** [1] - 48:25
**health** [5] - 15:12;
17:20; 47:18;
53:17; 58:1
**hear** [9] - 14:25;
15:1; 19:23;
20:2; 40:22, 24;
41:12; 46:15;
54:4
**heard** [3] - 30:23;
47:11
**held** [4] - 13:3, 6;
45:11; 66:8
**Helga** [1] - 6:23
**help** [1] - 63:21
**helpful** [4] - 7:2;
42:24; 61:21
**hereby** [1] - 66:7
**herself** [5] -
29:15; 43:8, 22;
44:4; 45:2
**high** [4] - 19:10;
35:1; 45:15
**highlight** [1] -
41:22
**himself** [1] -
43:21
**History** [1] - 19:17
**history** [9] - 14:5;
17:21; 33:10;
38:16; 42:14;
44:6; 45:3; 62:7
**hit** [1] - 28:21
**hitting** [1] - 32:2
**hold** [3] - 7:11;
15:16; 61:12
**holes** [1] - 32:24
**honor** [2] - 2:25;
5:10
**Honor** [69] - 3:11,
19, 23; 4:5, 10,
14; 5:20; 7:1, 8,
16, 19; 8:1, 5,
13; 9:2, 12;
10:1, 4, 15;
12:6, 10; 13:23;
14:1; 16:9; 20:3,
16; 21:1, 24;
22:2, 24; 23:18;
25:3, 18; 26:11,
18, 21; 28:19;
30:23; 31:11;
32:17; 33:13;

34:10; 35:25;
36:9; 37:6; 40:9;
41:1, 10, 13;
42:8; 43:7;
45:11; 46:17;
52:12, 24;
54:12; 59:8, 11;
61:1, 11, 19;
62:14, 18; 63:5,
24; 65:7, 19
**Honorable** [1] -
65:22
**hopefully** [2] -
29:7; 60:24
**horrendous** [1] -
43:6
**horrible** [3] -
41:22; 62:10
**horrific** [10] -
14:6; 27:8;
44:10; 47:11;
48:10-12, 25;
51:4
**hours** [2] - 56:19;
57:7
**house** [1] - 54:21
**housekeeping** [2]
- 15:9; 16:10;
20:4
**houses** [1] -
54:19
**housing** [1] -
54:23
**human** [4] -
48:1-3, 6
**hurt** [1] - 46:17
**husband** [1] - 2:9

## I

**idea** [1] - 31:8
**identical** [1] -
51:10
**identically** [1] -
50:14
**identified** [1] -
28:3
**identify** [1] - 3:9
**identity** [1] -
45:20
**images** [2] - 6:9;
10:23
**imaginable** [1] -
28:8
**imagine** [1] - 34:4
**immediately** [3] -
16:21; 22:15, 21
**impact** [12] - 5:17,
22, 25; 6:3, 10,
24; 21:2; 34:11,

13-14; 62:25
**implicitly** [1] -
30:7
**important** [5] -
38:10, 12,
14-15; 48:8
**impose** [12] -
13:15, 18;
14:22; 26:10;
27:18; 28:19;
35:12; 38:24;
47:24; 51:15;
55:19
**imposed** [9] -
14:8; 16:24;
23:11; 36:2;
38:13; 54:18;
59:1; 62:12;
64:24
**imposes** [2] -
33:11; 60:8
**imposing** [4] -
13:11; 16:14;
26:24; 27:12
**imposition** [1] -
16:18
**imprisonment**
[14] - 19:19;
35:18, 20;
36:11, 23;
37:14; 50:4, 10;
51:7; 52:4, 9
**inappropriate** [2]
- 41:24; 44:7
**incarcerated** [1] -
41:18
**incident** [3] -
36:12, 18; 50:11
**incidents** [1] -
33:16
**include** [8] - 11:2;
14:3, 5; 16:20;
20:6; 37:12;
49:20; 54:24
**included** [3] -
11:17; 43:24;
63:3
**includes** [2] -
36:21; 37:22
**including** [4] -
6:2; 8:18; 17:20;
58:18
**inconceivable** [1]
- 34:25
**independent** [1] -
61:15
**indescribable** [1]
- 27:10
**indicate** [2] -
22:20; 61:9

**indicated** [5] -
11:9; 27:19;
43:15; 62:5;
63:18
**indicates** [3] -
5:10; 30:9; 44:3
**indicating** [1] -
61:7
**indication** [1] -
31:5
**indicted** [1] - 2:7
**indictment** [6] -
2:7; 12:15; 17:3;
21:6; 45:6
**indigency** [1] -
60:4
**indigent** [4] -
59:23; 60:15, 21
**individual** [3] -
33:19; 40:2;
57:11
**individually** [2] -
39:3; 48:19
**individuals** [1] -
14:8
**indulgence** [1] -
10:20
**infant** [16] - 5:13;
6:14; 8:25; 10:9,
16; 11:7; 21:23;
23:9; 26:23;
28:9; 29:18;
34:20; 37:24;
63:1
**inflicted** [1] - 27:1
**informant** [1] -
57:10
**information** [8] -
17:5, 17, 20, 22;
18:1; 21:18;
22:4
**inheritance** [1] -
22:18
**initial** [1] - 57:21
**initiated** [1] -
30:19
**initiation** [2] -
30:11, 22
**Inmate** [1] - 22:16
**inmates** [1] -
54:23
**inquire** [1] - 2:23
**insert** [1] - 32:19
**inside** [2] - 32:1,
20
**install** [1] - 57:17
**instead** [1] - 33:1
**instinct** [1] - 43:5
**instructions** [3] -
56:20; 57:12

**intend** [2] - 12:7;
23:12
**intent** [2] - 27:20;
31:2
**intentional** [1] -
27:6
**interact** [1] -
44:19; 57:4
**interacts** [1] -
44:25
**interest** [2] -
30:12; 45:24
**interested** [1] -
41:7
**Internet** [2] - 6:1;
57:23
**introduced** [2] -
11:10; 17:1
**investigation** [1] -
20:18
**Investigation** [7] -
9:10; 12:22;
15:16; 17:5, 16;
18:17; 20:19
**invite** [1] - 61:8
**invited** [1] - 43:24
**involve** [1] - 41:6
**involved** [2] -
20:8; 31:6
**iPhone** [2] - 8:18
**issue** [7] - 26:22;
31:20; 39:23,
25; 48:18, 24;
62:15
**issues** [5] - 15:12;
38:16; 47:19;
50:17; 62:17
**items** [1] - 20:4
**itself** [2] - 35:16;
48:4

## J

**J&C** [1] - 22:3
**jail** [2] - 45:12;
46:22
**January** [2] -
12:20; 46:20
**jeopardized** [1] -
60:18
**job** [1] - 44:18
**joint** [4] - 21:17;
62:20, 24
**judge** [3] - 2:15,
18; 18:2
**Judge** [2] - 16:17;
17:8
**judges** [1] - 13:9;
14:17
**judgment** [1] -

62:19
**Judgment** [4] -
16:20; 55:1;
56:8; 57:1
**Judicial** [1] - 66:9
**judicial** [2] - 49:2;
56:18
**June** [4] - 53:2, 4,
7; 66:10
**juris** [1] - 39:24
**jurisdiction** [1] -
53:7
**justice** [1] - 27:11
**justify** [1] - 29:16

## K

**keep** [4] - 5:4; 9:5;
46:15; 50:15
**keeps** [1] - 33:11
**kept** [2] - 5:9;
31:23
**key** [3] - 12:16;
14:13
**kind** [12] - 15:13;
17:25; 19:12;
22:6, 23; 44:23;
48:5, 7, 13;
57:19; 58:15;
60:16
**kinds** [1] - 25:13
**knowingly** [1] -
56:21
**knowledge** [1] -
31:18
**known** [2] - 4:17;
19:12
**knows** [4] - 33:6,
13; 45:6, 8

## L

**large** [1] - 34:4
**last** [9] - 2:20; 3:4;
4:21; 7:4; 16:10;
31:4; 40:5; 53:7;
61:1
**lasting** [2] -
34:11, 13
**lastly** [1] - 32:22
**late** [1] - 32:6
**laughing** [1] -
30:24
**law** [7] - 16:12;
23:1; 26:1; 34:3,
6; 57:6, 9
**lawfully** [1] - 9:4
**Lawrence** [2] -
2:9; 33:22
**lawyer** [1] - 49:6

Sentencing *REDACTED* 5/18/23

**leads** [3] - 41:24; 42:1
**least** [8] - 4:21; 14:7; 23:13; 26:25; 35:1; 45:24; 47:6
**leave** [3] - 49:9; 56:21
**legal** [3] - 38:16; 48:13
**length** [2] - 29:24; 54:2
**lesser** [2] - 29:11
**letters** [2] - 16:25; 42:19
**level** [11] - 18:19, 22; 19:3, 5, 7, 10, 17; 53:23
**levels** [1] - 19:11
**life** [21] - 19:18; 26:24; 27:18; 33:12; 34:7; 35:5, 7; 41:17; 42:18; 47:25; 48:1; 49:4, 12, 14-15, 17; 55:2, 12, 19; 65:3
**life-equivalent** [8] - 26:24; 27:18; 35:5, 7; 47:25; 49:12, 14; 65:3
**lifelong** [1] - 31:22
**light** [5] - 2:19; 5:17; 49:17; 54:18; 65:3
**like-minded** [1] - 33:19
**limit** [1] - 43:1
**limited** [1] - 54:24
**lines** [1] - 33:2
**link** [1] - 42:4
**list** [2] - 22:13; 56:6
**listed** [2] - 22:13; 57:1
**listened** [1] - 62:5
**listening** [1] - 47:1
**literally** [1] - 33:4
**litigation** [1] - 38:21
**LITTLE** [25] - 4:10, 14; 7:8; 8:13; 10:1, 4; 12:6, 10; 14:1; 16:9; 25:18, 24; 26:3, 11, 18; 41:1, 10, 13; 52:24; 54:12;

59:8; 62:14, 18; 64:8; 65:19
**live** [1] - 56:24
**local** [2] - 44:4; 55:25
**LONGMORE** [1] - 66:12
**Longmore** [2] - 46:14; 66:6
**look** [11] - 6:22; 7:10, 21-22; 8:2, 4; 31:12; 42:15, 22; 44:14; 54:6
**looked** [1] - 30:20
**looking** [5] - 15:15; 28:15; 33:8; 35:22; 47:12
**looks** [1] - 45:19
**lost** [2] - 6:21; 48:13
**lottery** [1] - 22:19
**Louisiana** [1] - 44:2
**low** [1] - 54:21
**lower** [1] - 46:3

## M

**machine** [1] - 63:13
**mailbox** [1] - 58:16
**maladjusted** [2] - 43:12; 44:6
**maladjustment** [1] - 42:5
**male** [1] - 54:19
**man** [2] - 43:23; 44:2
**mandated** [1] - 18:14
**mandatory** [8] - 13:1, 4; 55:13, 24; 56:15; 57:16; 59:22; 60:9
**marked** [4] - 8:6; 11:12, 14; 17:15
**Marshals** [1] - 45:12
**Maryland** [5] - 44:16-18; 66:7
**mask** [4] - 5:2-4; 46:15
**masking** [1] - 2:12
**masks** [5] - 2:13, 16, 21; 3:3; 4:8

**material** [2] - 6:19; 11:8
**matter** [25] - 5:12; 8:20, 23; 11:23; 12:3; 15:5; 16:11; 19:13; 23:15, 17; 25:10, 21-22; 30:15; 35:11; 36:3; 38:17; 40:11; 48:17; 51:18; 54:2, 14; 64:1, 21; 66:8
**matters** [4] - 11:3; 15:9; 19:20; 59:11
**maximum** [7] - 36:6; 39:3; 50:3, 11; 51:6; 62:2
**McCroskey** [25] - 2:5; 4:11, 21; 5:3; 8:15; 9:8; 12:2, 5, 13; 16:7; 17:11; 22:11; 23:9; 29:1; 33:23; 41:3, 15; 42:4, 9, 20; 43:8; 46:8; 47:2; 54:15; 55:2
**McCroskey's** [2] - 42:15; 43:15
**McGuinn** [6] - 3:17; 8:4; 19:24; 63:10; 65:8
**MCGUINN** [2] - 3:19; 65:10
**mean** [5] - 26:3; 36:7; 45:4; 47:10; 48:11
**meaning** [1] - 13:9
**means** [3] - 17:11; 18:8; 56:6
**medication** [5] - 15:13, 17, 19, 21, 24
**meet** [6] - 63:25; 64:7, 10-11, 17, 20
**meeting** [1] - 47:12
**meets** [1] - 44:15
**members** [5] - 2:24; 5:6; 12:4; 17:13; 18:4
**memo** [7] - 30:8, 16-17; 31:4; 44:14; 61:17
**memoranda** [1] -

28:23
**memorandum** [4] - 19:25; 40:23; 60:14; 61:14
**men** [3] - 43:9; 44:20
**mental** [6] - 15:12; 17:20; 43:19; 47:18; 53:17; 57:25
**mention** [1] - 63:17
**mentioned** [4] - 23:19; 39:13; 51:12; 59:12
**mentions** [2] - 28:22; 42:11
**mercy** [1] - 50:12
**messages** [2] - 30:13; 31:24
**met** [1] - 27:13
**microphone** [1] - 46:16
**middle** [1] - 45:13
**mind** [2] - 45:22; 53:21
**minded** [1] - 33:19
**minimum** [4] - 50:9; 53:24; 54:1, 17
**minor** [1] - 5:24
**minus** [1] - 53:11
**minute** [3] - 60:3; 61:23; 63:14
**missed** [3] - 52:15; 59:14; 61:17
**mitigation** [2] - 61:7, 10
**model** [1] - 42:24
**molester** [1] - 55:10
**mom** [1] - 42:17
**moment** [3] - 3:2; 7:21; 35:13
**momentarily** [1] - 63:7
**moments** [1] - 14:25
**Monday** [2] - 10:7; 47:13
**monitoring** [1] - 57:18
**monthly** [1] - 22:6
**months** [19] - 36:6; 37:14, 17; 39:5, 7; 50:5, 11, 18, 21, 23; 51:1, 8, 24;

52:1, 5, 8; 53:11
**morally** [1] - 43:12
**morning** [7] - 2:4; 3:11; 4:10, 22-23; 15:17, 24
**most** [7] - 30:25; 42:3; 43:6; 45:14; 47:10; 55:17
**mostly** [3] - 43:9
**mother** [1] - 43:17
**mother's** [1] - 43:16
**Motorola** [1] - 8:19
**move** [1] - 19:7
**moving** [1] - 19:3
**MR** [101] - 3:11, 15; 4:3, 5, 10, 14; 5:20; 6:7, 15, 17; 7:1, 4, 8, 16, 19; 8:5, 11, 13; 9:2, 21; 10:1, 4, 15, 20, 23; 11:1, 4, 14, 19, 25; 12:6, 10; 13:23; 14:1; 16:9; 19:7; 20:3, 16; 21:1, 4, 7, 14, 24; 22:2, 8, 14, 24; 23:1, 13, 18; 25:3, 18, 24; 26:3, 11, 18, 21; 30:17; 31:16; 35:25; 36:9, 12, 25; 37:6, 20; 38:4, 8; 39:10, 18; 40:5, 9, 14, 16, 20; 41:1, 10, 13; 52:12, 15, 21, 24; 54:8, 12; 59:8, 11, 20; 60:1, 7; 61:1, 19; 62:14, 18; 63:5, 9, 19, 24; 64:8; 65:7, 15, 19
**MS** [5] - 3:19, 23; 4:6; 8:1; 65:10
**multiple** [2] - 34:20; 61:3
**multistep** [1] - 14:19
**murdering** [1] - 47:20
**must** [19] - 13:10; 33:9, 21; 55:25; 56:1-3, 17, 21, 23-24; 57:1-3,

52:1, 5, 8; 53:11
**morally** [1] - 43:12
**morning** [7] - 2:4; 3:11; 4:10, 22-23; 15:17, 24
**most** [7] - 30:25; 42:3; 43:6; 45:14; 47:10; 55:17

6, 9, 18, 20

## N

**name** [4] - 4:2; 15:22; 23:2; 45:12
**names** [1] - 23:6
**nasty** [1] - 47:13
**nature** [4] - 14:6; 29:24; 43:11; 48:9
**nauseating** [2] - 50:7, 12
**Navy** [1] - 44:5
**near** [1] - 58:17
**nearly** [1] - 34:21
**necessarily** [2] - 26:4; 39:14
**necessary** [7] - 14:23; 33:7; 34:5; 39:15; 58:1, 20; 62:3
**need** [11] - 15:10; 22:3; 26:6; 30:3; 33:24; 35:7, 12; 38:20; 49:1; 51:17; 59:4
**needless** [1] - 38:16
**needs** [4] - 32:25; 43:18; 45:8; 46:1
**negative** [1] - 16:3
**neglect** [1] - 29:13
**nerve** [1] - 32:2
**never** [5] - 28:4; 34:22; 41:17; 44:24
**new** [1] - 15:21
**next** [1] - 33:21
**nice** [4] - 4:12; 20:20, 24
**nine** [1] - 36:16
**nobody** [1] - 33:22
**noise** [1] - 63:13
**nolle** [1] - 19:14
**nolle-prossed** [1] - 19:14
**none** [1] - 18:3
**nonfrivolous** [3] - 61:6, 10; 62:1
**nonvictims** [2] - 21:2, 4
**normal** [2] - 32:7; 44:8
**note** [13] - 3:25;

8:1, 15; 10:6;
14:9; 15:10;
48:8; 49:13;
61:24; 62:13,
25; 64:1, 14
noted [5] - 14:17;
26:19; 35:11;
52:7; 62:9
notes [1] - 54:25
nothing [2] - 9:1;
63:5
notice - 5:12,
19
Notification [1] -
56:12
notify [1] - 57:6
November [1] -
31:25
Number [4] - 2:6;
8:19; 20:1;
40:23
number [8] - 31:5;
35:1; 37:8; 41:4;
42:11; 45:19;
52:11
numbers [1] -
47:24
numerous [2] -
5:21; 25:11

**O**

o'clock [1] - 15:25
objection [3] -
18:18; 25:17;
64:4
objections [3] -
9:20; 10:3, 6
obscene [2] -
50:11, 14
obviously [4] -
11:5; 36:22;
46:1; 64:24
occasions [1] -
25:13
occur [2] - 38:15;
56:20
occurred [2] -
26:5; 63:15
occurs [1] - 43:7
OF [1] - 66:5
Offender [1] -
56:11
offender [3] -
41:3; 53:13;
58:19
offenders [3] -
42:12; 53:22;
54:21
offense [15] -

14:6; 18:19, 22;
19:2, 9, 11, 17;
34:2; 36:8, 10;
39:22, 25;
48:10, 19; 53:9
offenses [4] -
29:23; 35:12;
36:22; 51:15
office [1] - 58:16
Office [5] - 17:9;
20:17, 23; 56:18
Officer [1] - 3:21
officer [9] - 56:24;
57:2, 7, 12-13,
17, 20; 58:16
OFFICIAL [2] -
66:5, 12
officials [7] -
17:12; 20:15;
25:8; 63:12;
64:18, 21; 65:13
often [2] - 30:19;
42:2
old [2] - 45:3;
49:16
Once [1] - 64:6
once [2] - 64:6, 19
one [48] - 2:6; 6:7,
10, 20, 25; 8:3;
15:16; 18:5;
28:25; 29:5;
30:13; 33:3, 8;
36:4, 7, 17, 23;
37:4, 10, 18;
38:3, 6; 39:4,
10; 41:4, 11;
42:6, 22; 44:4;
46:24; 47:2;
50:22, 24;
51:10, 20-21,
23; 52:6; 54:13;
55:21; 59:21;
61:12; 62:14
opening [1] -
45:21
opine [1] - 52:13
opinion [2] -
35:10; 51:14
opinions [3] -
12:16; 14:13
opportunity [8] -
9:9, 11; 12:9;
15:2; 23:5;
39:20; 46:9, 24
Order [6] - 2:3;
16:21; 17:24;
55:1; 56:8; 57:1
order [12] - 8:16,
21; 18:6, 10;
21:17, 25; 22:2,

6, 13, 15; 53:7;
56:4
outline [1] - 12:17
outrageous [1] -
43:13
outweighed [1] -
29:24
overall [4] - 38:3,
5, 7
overlooked [2] -
59:16; 60:14
overwhelming [2]
- 27:25; 30:13
own [4] - 31:7;
46:9; 57:7; 59:5

**P**

p.m [1] - 65:24
page [1] - 66:8
Pages [1] - 18:16
paid [2] - 22:21;
56:6
Paige [3] - 3:21;
9:11
pain [6] - 27:10;
29:7; 31:21;
48:14; 50:6
painful [1] - 32:9
pandemic [1] -
3:4
Paper [3] - 8:19;
19:25; 40:23
paperwork [1] -
59:25
Paragraphs [1] -
25:23
parental [2] -
21:21; 43:5
parks [1] - 58:18
part [13] - 7:14,
17; 8:9; 11:17;
22:3; 43:7, 13;
44:20, 25; 45:1,
25; 62:10
Part [2] - 17:23,
25
participate [4] -
53:18; 56:13;
57:25; 58:19
particular [4] -
5:24; 11:12;
12:24; 13:4
particularly [1] -
47:12
parties [2] - 2:24;
63:25
parties' [1] -
62:19
passed [1] - 16:12

passing [1] -
28:22
past [2] - 11:20;
30:2
Paul [2] - 3:12;
63:16
pause [1] - 47:4
pay [1] - 22:22
payment [3] -
22:7; 56:6
Pedo [1] - 32:7
pedophile [1] -
29:2
penalties [1] -
23:11
penalty [1] - 36:6
penetration [1] -
32:21
people [12] - 3:3,
5; 20:5, 10;
23:16; 33:4;
34:16; 45:13;
46:18; 47:14;
57:22; 64:2
per [1] - 60:22
perfectly [1] -
11:22
perhaps [4] -
17:13; 20:10;
49:10; 53:11
period [3] - 17:14;
55:21, 23
periodic [1] -
57:21
permanent [1] -
34:13
permission [1] -
56:23
permitted [2] -
4:7; 18:5
perpetrated [1] -
43:9
perpetuated [1] -
30:25
person [5] - 31:6;
44:3; 46:23, 25
personal [2] -
14:5; 30:11
personally [3] -
25:10, 15; 46:8
phrase [2] -
49:12; 56:7
physical [2] -
32:19; 34:14
place [2] - 55:12;
56:25
placed [2] - 32:20;
41:5
places [2] - 11:21;
30:13

plainly [1] - 62:3
planned [1] -
30:20
planning [2] -
30:22; 33:20
plans [1] - 29:3
plays [1] - 21:22
plea [9] - 12:15;
13:13; 16:24;
17:2; 19:8; 42:7;
49:20; 58:25
plead [2] - 27:20;
45:5
pleased [1] - 5:8
pleasurable [1] -
32:15
pleasure [1] -
27:8
pled [7] - 2:10;
12:12, 14-15;
17:1; 44:9; 45:5
plenty [1] - 3:2
Plexiglass [1] -
3:7
point [13] - 13:22,
24; 14:19; 31:4;
39:10; 40:5;
43:4; 52:10;
59:9; 61:1; 64:5;
65:6, 18
pointed [1] - 43:3
points [1] - 41:23
policies [1] - 2:12
policy [3] - 2:19;
17:14; 49:20
populations [1] -
54:19
pornography [14]
- 5:15; 6:1, 5;
10:19; 18:20;
36:21; 37:22;
51:3, 5; 52:3;
60:2, 10
pose [1] - 57:11
position [6] -
26:3; 27:15;
36:5; 37:1, 5;
54:8
positive [1] - 3:6
positively [2] -
49:7; 50:7
possess [3] -
56:1; 57:8;
58:14
possession [6] -
5:16; 6:5; 10:18;
11:6; 37:22;
52:3
possible [3] -
20:11; 55:13;

65:3
possibly [2] -
34:8; 49:18
post [1] - 58:15
potential [3] -
49:25; 50:17;
64:4
practice [2] -
4:19; 20:23
precaution [1] -
3:8
precautions [1] -
51:19
preliminary [1] -
8:16
premeditated [1]
- 27:5
prepared [1] -
9:10
preparing [1] -
16:21
preponderance
[3] - 25:19, 22;
26:7
presence [1] -
10:8
present [1] -
42:21
presentence [5] -
7:14, 23; 8:10;
17:25; 35:23
Presentence [6] -
9:9; 12:22;
15:16; 17:5, 16;
18:17
presently [2] -
45:14; 49:16
presents [1] -
30:1
preserved [1] -
13:17
President [1] -
18:8
presiding [2] -
2:15, 18
presume [1] -
14:18
pretty [1] - 47:13
prevention [1] -
45:21
previously [3] -
2:12; 8:21;
12:25
prison [8] - 33:12;
45:9; 46:23;
53:6; 54:20;
56:4; 59:17;
60:23
prisoner [2] -
22:22; 56:7

**Prisons** [2] - 41:4, 16
**private** [3] - 4:18; 20:23; 47:7
**Probation** [3] - 3:21; 17:8; 56:18
**probation** [9] - 56:24; 57:2, 7, 12-13, 17, 20; 58:16
**problem** [2] - 49:25; 51:11
**Procedure** [1] - 58:24
**procedure** [1] - 12:3
**procedures** [1] - 16:11
**proceed** [3] - 5:11; 9:7; 16:7
**proceeding** [4] - 2:15; 11:11; 49:20; 63:6
**proceedings** [10] - 5:5; 7:24; 8:8; 16:22; 25:7, 9; 47:4; 49:13; 65:24; 66:8
**process** [4] - 12:2, 17; 14:19; 15:3
**produced** [1] - 37:23
**product** [2] - 27:6; 43:1
**production** [6] - 10:24; 21:4, 15; 37:9; 60:2, 10
**Professional** [1] - 66:6
**proffering** [1] - 26:8
**program** [4] - 53:18; 56:14; 57:25; 58:1
**Program** [1] - 22:16
**programming** [4] - 41:6; 45:17, 19, 25
**programs** [2] - 46:20; 58:1
**promote** [1] - 34:2
**pronouncing** [1] - 4:2
**propriety** [1] - 38:17
**prosecutor** [2] - 20:22; 47:7

**prossed** [1] - 19:14
**prostituting** [1] - 44:4
**prostitution** [1] - 42:3
**PROTECT** [4] - 16:11, 13, 16; 18:14
**provide** [4] - 21:18; 22:3; 27:11; 47:21
**provided** [2] - 9:3
**provides** [1] - 46:1
**provisions** [3] - 13:4; 16:13
**prudence** [1] - 39:24
**PSR** [2] - 43:19; 44:3
**psychological** [2] - 34:13; 53:16
**public** [7] - 2:13, 17, 25; 5:6; 17:12; 23:16
**Public** [2] - 4:18; 64:15
**publicly** [1] - 23:17
**punishment** [3] - 30:4; 34:3, 6
**purely** [1] - 31:8
**purposes** [2] - 11:11; 38:11
**pursuant** [8] - 12:14; 14:19; 17:23; 53:4; 57:24; 58:23; 59:2; 66:7
**put** [5] - 11:20; 23:3; 38:11; 60:13; 63:13

## Q

**questioned** [1] - 57:6
**questions** [2] - 35:4; 56:24
**quick** [1] - 8:2
**quickly** [1] - 54:6
**quite** [4] - 3:3, 5; 31:14; 62:7
**quotes** [1] - 31:12

## R

**Rachel** [2] - 4:1; 25:12

**raise** [5] - 3:2; 5:8; 61:22; 62:15
**raises** [1] - 48:24
**range** [9] - 14:18, 20; 18:16; 19:18; 36:24; 49:15; 52:4; 62:2
**rape** [4] - 29:3; 32:24; 34:12
**raped** [1] - 43:22
**rapes** [1] - 34:20
**raping** [2] - 26:23; 32:4
**rare** [1] - 55:9
**rather** [1] - 30:2
**rationale** [1] - 60:20
**RDB-22-220** [1] - 2:6
**reach** [1] - 42:21
**read** [8] - 6:18, 20; 19:25; 23:4; 30:14; 31:14; 32:18; 40:23
**reading** [1] - 30:8
**ready** [2] - 5:11; 9:6
**real** [2] - 29:25; 31:21
**really** [7] - 14:11; 26:8; 30:3, 20, 24; 32:23; 47:25
**reason** [1] - 54:16
**reasonable** [2] - 14:18; 55:18
**reasonably** [1] - 58:4
**reasons** [1] - 16:23
**receive** [3] - 26:23; 50:4; 56:20
**received** [2] - 5:18; 22:18
**recent** [2] - 2:19; 61:4
**recognize** [2] - 55:2, 4
**recommend** [12] - 41:3, 5; 53:3, 13-17; 54:5, 7, 15, 22
**recommendation** [2] - 53:25; 54:11
**recommendations** [1] - 41:2
**recommended** [2] - 64:25; 65:1

**record** [22] - 3:10; 4:16; 8:9, 20; 10:7; 11:17, 24; 13:14; 19:13; 23:3, 12, 16-17; 30:15; 32:17; 38:25; 48:16, 18; 61:11; 63:14; 64:14
**recorded** [1] - 34:21
**recording** [2] - 31:7; 33:5
**redacted** [2] - 23:3, 6
**redactions** [1] - 23:14
**refer** [2] - 35:4; 61:17
**reference** [6] - 15:11; 23:2, 8; 31:11; 61:16; 63:19
**referenced** [4] - 12:22; 21:1; 31:17; 61:2
**references** [2] - 9:23; 54:20
**referred** [1] - 19:15
**referring** [2] - 6:25; 61:13
**reflect** [6] - 4:16; 13:14; 26:25; 34:1, 5; 48:16
**reflects** [2] - 29:22; 59:5
**Reform** [1] - 13:2
**refrain** [1] - 56:2
**regard** [3] - 4:16; 19:6; 35:6
**regards** [1] - 20:14
**Registered** [1] - 66:6
**Registration** [1] - 56:11
**regulations** [1] - 66:9
**relapse** [1] - 45:21
**relate** [6] - 5:24; 6:4, 9; 10:17; 11:8; 16:14
**related** [4] - 5:23; 8:23; 9:23; 19:14
**relates** [7] - 10:10, 17; 18:19, 21, 24;

35:23
**relating** [3] - 21:6; 52:16; 57:14
**relationship** [6] - 23:2, 6, 8; 42:22; 43:10; 44:3
**relationships** [1] - 44:20
**relatively** [1] - 61:4
**release** [13] - 55:12, 14-15, 19, 21, 23; 56:3, 15, 19; 57:14; 58:20
**released** [6] - 22:17; 23:4; 56:4, 15; 57:15; 58:21
**relevantly** [1] - 42:3
**relief** [1] - 56:7
**remaining** [1] - 18:25
**remains** [1] - 3:7
**remand** [1] - 54:14
**remanded** [1] - 62:4
**remember** [4] - 29:8; 32:4, 11; 44:5
**remembers** [2] - 32:4, 8
**remind** [2] - 25:6; 31:16
**remorse** [1] - 28:23
**remorseful** [2] - 45:4; 46:19
**rendered** [2] - 12:25; 13:8
**rent** [1] - 58:15
**repeated** [2] - 27:5, 10
**replaces** [1] - 45:9
**Report** [6] - 9:10; 12:22; 15:16; 17:5, 16; 18:17
**report** [7] - 7:14, 23; 8:10; 17:25; 35:23; 56:17, 21
**reported** [1] - 66:8
**reporter** [1] - 46:14
**REPORTER** [2] - 66:5, 12

**Reporter** [1] - 66:6
**reporting** [1] - 56:20
**represent** [3] - 55:10; 59:2
**representative** [3] - 6:11, 13; 63:1
**representatives** [2] - 20:6, 16
**represented** [2] - 45:14; 60:4
**represents** [3] - 27:2; 64:3, 16
**reputation** [1] - 49:6
**request** [9] - 7:13; 8:24; 18:9; 29:11; 37:13; 38:10, 23; 39:8; 63:25
**requesting** [4] - 37:2, 16; 38:2; 40:3
**requests** [3] - 21:9
**require** [2] - 2:21; 57:24
**required** [4] - 2:13, 16; 16:11; 60:22
**requirements** [2] - 18:13; 56:11
**requires** [1] - 16:16
**research** [2] - 61:15, 21
**resentencing** [1] - 62:4
**resentencings** [1] - 61:3
**reside** [2] - 56:19, 22
**respect** [16] - 5:6, 14; 8:17, 22, 24; 10:9; 12:2; 18:25; 21:15; 25:3; 34:2, 5; 39:24; 49:5; 59:12
**respond** [1] - 39:20
**responding** [1] - 5:4
**responds** [1] - 32:12
**response** [1] - 29:20
**responsibility** [3] - 19:4; 27:22;

46:18
**Responsibility** [1] - 22:16
**rest** [1] - 33:12
**restitution** [12] - 21:9, 15, 17; 22:6, 13; 56:5, 8; 60:17, 19; 62:19
**result** [4] - 13:1; 31:22; 33:25; 34:15
**resulted** [2] - 2:20; 28:1
**retrieve** [3] - 5:2; 7:9, 20
**retrofitted** [1] - 3:7
**reversed** [2] - 61:5; 63:20
**revictimized** [1] - 41:25
**review** [11] - 9:9, 11; 13:11; 17:12; 18:3, 5, 10; 23:5, 13; 36:2; 38:12
**reviewed** [5] - 10:8; 11:9; 18:2; 40:24; 62:6
**revised** [2] - 2:16; 17:24
**Richard** [1] - 4:1
**rights** [3] - 8:24; 21:21; 58:23
**rise** [1] - 65:22
**risk** [2] - 31:21; 57:11
**road** [2] - 48:25; 49:19
**role** [1] - 42:24
**Ross** [1] - 61:5
**RPR** [1] - 66:12
**rules** [2] - 2:15; 19:2
**Rules** [1] - 58:24
**run** [2] - 50:21; 55:22

## S

**sad** [1] - 46:19
**sadistic** [1] - 29:18
**sadly** [1] - 33:23
**sadomasochism** [1] - 43:25
**Samsung** [1] - 8:18
**satellite** [1] -

54:20
**satisfied** [4] - 9:16; 16:6, 9; 60:4
**save** [1] - 7:2
**saw** [1] - 30:23
**school** [4] - 43:18; 44:1; 45:16
**schools** [1] - 58:18
**seal** [1] - 18:2
**sealed** [3] - 8:22; 23:2, 12
**search** [2] - 57:20, 23
**seated** [2] - 3:25; 19:23
**second** [7] - 14:13; 15:16; 31:6; 41:11; 47:3; 54:13; 61:12
**section** [1] - 17:15
**Section** [2] - 17:23; 41:20
**sections** [1] - 12:25
**security** [6] - 53:23; 54:1, 17, 21
**see** [14] - 4:12; 18:5, 9; 21:12; 25:15, 21; 27:4; 55:14; 61:16; 63:11, 16, 18; 65:13, 16
**seeing** [1] - 25:18
**seek** [2] - 18:10; 46:23
**seeking** [1] - 33:18
**self** [2] - 45:20
**self-awareness** [1] - 45:20
**self-esteem** [1] - 45:20
**sending** [1] - 45:13
**senior** [1] - 44:16
**sense** [2] - 31:1, 10
**sent** [1] - 6:8
**sentence** [69] - 13:11, 15, 18; 14:22; 16:18, 24; 26:9, 22, 25; 27:12, 14-15, 18; 28:19;

29:11, 22; 33:11, 25; 34:1, 5, 11, 19; 35:5, 7; 36:2; 37:3, 16; 38:2, 13, 21, 24; 39:1, 4, 6; 41:14, 17; 45:9; 46:3; 47:24; 48:1, 15; 49:2, 7, 12, 15-16, 23; 50:1, 10, 18; 52:25; 53:5, 11; 54:2, 18; 55:20; 58:22; 59:1; 62:1, 3, 12; 64:24; 65:3, 14
**sentenced** [8] - 2:10; 42:12; 62:23; 64:6, 11, 19-20; 65:14
**sentences** [15] - 14:8; 16:15; 34:7; 35:12; 39:6, 8; 42:13; 50:20; 51:16, 20, 25; 52:2, 5, 7
**Sentencing** [12] - 12:21, 24; 13:2, 5, 7; 15:6; 16:19; 17:6, 9; 18:4; 19:1
**sentencing** [20] - 2:11; 12:3, 17; 14:24; 16:7; 19:10, 18, 25; 28:22; 30:16; 31:4; 35:8; 40:23; 41:15, 20; 42:4; 49:20; 60:14; 61:14; 64:1
**separate** [9] - 35:15, 22; 36:7, 17, 20; 39:17, 21; 40:2, 11
**separately** [1] - 51:8
**serial** [1] - 55:10
**series** [11] - 6:2, 21-23; 8:4; 10:22; 31:24; 37:25; 55:3
**seriousness** [3] - 29:22; 34:2, 5
**served** [4] - 53:2, 6, 8
**service** [1] - 4:15
**Services** [2] - 8:24; 20:7

**services** [1] - 29:21
**serving** [1] - 58:22
**set** [1] - 18:16
**seven** [5] - 25:8; 36:17; 37:8; 39:13; 40:6
**several** [7] - 21:18; 62:20, 24
**sex** [4] - 28:7; 41:3; 53:13; 58:19
**Sex** [1] - 56:11
**sexual** [30] - 2:8; 18:23; 27:7; 29:14; 30:5, 12, 25; 31:7; 33:14; 35:15, 18, 22; 36:18; 39:12, 25; 40:13, 18; 41:21, 23; 42:1, 5; 43:11, 24; 44:6; 50:3, 8, 20
**sexually** [5] - 29:2; 31:19; 41:24; 43:20; 58:15
**shall** [11] - 22:22; 50:4; 51:8, 21; 52:5; 53:1, 9; 55:11, 18
**Sheriff's** [1] - 20:18
**shocking** [2] - 47:5, 21
**shockingly** [2] - 33:25; 34:4
**shocks** [1] - 47:16
**short** [1] - 57:12
**show** [2] - 30:19; 45:24
**sick** [1] - 33:4
**sidebar** [2] - 63:15; 64:13
**signed** [4] - 8:17, 20-21; 9:1
**significant** [1] - 33:24
**similar** [1] - 14:12
**similarly** [1] - 14:8
**simply** [3] - 27:3; 28:8; 30:10
**site** [1] - 44:15
**situated** [1] - 14:8
**situation** [1] - 28:2
**skills** [1] - 44:19
**Slappy** [5] - 61:5,

16, 18; 63:17; 64:22
**slightly** [1] - 29:15
**Social** [2] - 8:23; 20:7
**society** [3] - 27:12; 46:24; 47:23
**software** [1] - 57:18
**someone** [4] - 30:4, 6; 43:4, 14
**sometimes** [1] - 34:13
**somewhat** [1] - 29:14
**somewhere** [1] - 41:5
**soon** [2] - 43:22; 65:13
**sorry** [4] - 6:25; 59:15; 60:3; 63:16
**sort** [4] - 6:21; 22:7, 15; 23:1
**soul** [1] - 50:12
**speaking** [2] - 5:3; 19:24
**Special** [2] - 4:1; 25:11
**special** [8] - 43:18; 59:12, 18, 20, 22; 60:1, 7, 9
**specific** [6] - 35:24; 39:24; 41:2; 44:20; 50:11
**specifically** [5] - 10:17; 13:2; 14:17; 16:16; 61:13
**spreader** [1] - 2:21
**stack** [2] - 48:20; 51:10
**stacked** [4] - 36:7; 38:22; 39:2
**stacking** [19] - 35:11; 36:3; 38:15, 17; 39:23-25; 40:3, 11; 48:18, 22, 24; 49:25; 50:13, 16; 51:11, 15, 18
**stand** [4] - 8:15; 9:8; 20:10; 46:8
**standard** [2] -

56:17; 57:16
**standing** [1] - 54:14
**stands** [2] - 65:20, 22
**start** [1] - 32:13
**started** [2] - 46:20; 49:13
**starting** [1] - 14:19
**starts** [1] - 44:3
**state** [5] - 19:13, 15; 53:3, 8; 55:25
**State's** [2] - 20:17, 23
**statement** [5] - 6:10; 16:23; 46:10; 62:25
**statements** [7] - 5:17, 22, 25; 6:3, 24; 21:2
**States** [19] - 2:5; 3:12; 12:16, 18-20; 14:4, 15; 16:17; 18:9; 35:9; 51:13; 53:9; 56:9; 59:2; 60:8; 66:6, 9
**status** [1] - 2:23
**statute** [2] - 52:4; 60:12
**statutorily** [1] - 60:22
**statutory** [9] - 35:17, 20; 36:24; 38:1; 50:3, 9; 51:6; 62:3
**stenographicall y** [1] - 66:8
**stenographicall y-reported** [1] - 66:8
**step** [1] - 18:15
**stepfather** [1] - 43:20
**steps** [1] - 59:7
**sticker** [1] - 11:20
**still** [9] - 2:17; 3:7; 13:10; 18:14; 32:4; 48:3; 62:11; 63:14
**stop** [5] - 32:3, 6, 25; 33:18; 61:23
**strong** [1] - 48:23
**structure** [6] - 38:24; 47:22; 49:3, 10, 14; 55:1

**structured** [3] - 38:14; 48:15; 65:2
**structuring** [1] - 49:23
**struggled** [1] - 43:18
**student** [1] - 43:18
**study** [1] - 46:21
**stuff** [1] - 32:7
**subject** [8] - 6:16; 13:11; 17:12; 18:1; 42:17; 43:16; 57:23; 60:10
**subjects** [1] - 10:23
**submission** [3] - 29:10; 41:20, 23
**submit** [5] - 11:16; 42:19; 56:3; 57:19; 60:12
**submitted** [4] - 8:16; 17:1; 21:13; 22:1
**substance** [3] - 56:1, 3; 57:25
**substantial** [1] - 46:3
**substantially** [1] - 41:16
**substantive** [2] - 39:12; 61:2
**suffer** [1] - 34:17
**suffered** [4] - 27:9; 29:13; 30:6; 55:4
**suffering** [1] - 15:11
**suffice** [1] - 19:1
**sufficient** [2] - 9:16; 14:23
**suggest** [3] - 42:8, 21; 43:7
**suggested** [1] - 64:17
**suggesting** [2] - 44:14; 45:23
**suggestions** [1] - 54:3
**suggests** [2] - 30:3; 42:16
**suicidal** [1] - 42:2
**summarize** [1] - 45:19
**summarized** [1] - 13:21
**Summer** [4] - 2:5;

4:11; 29:1; 33:23
**supervised** [11] - 55:12, 14-15, 19, 21, 23; 56:15; 57:14; 58:20
**supervisors** [1] - 20:7
**supplements** [1] - 7:23
**supportive** [1] - 42:20
**supports** [1] - 30:11
**Supreme** [9] - 12:16, 20, 23; 13:3, 6; 14:14, 17; 48:21; 51:16
**surprisingly** [1] - 44:1
**system** [5] - 2:25; 5:10; 48:14; 49:2; 50:16

**T**

**table** [1] - 19:10
**talks** [2] - 41:20
**tally** [1] - 47:24
**tape** [2] - 10:8; 11:10
**Tara** [4] - 6:2, 23; 8:3; 37:25
**taught** [2] - 42:25; 45:1
**teach** [1] - 32:7
**technicalities** [1] - 48:13
**technically** [1] - 18:8
**temperate** [1] - 49:11
**tendency** [1] - 41:25
**term** [1] - 55:19
**terms** [35] - 6:1; 10:18; 11:6; 15:10; 19:11, 20; 25:13; 35:6; 36:1, 4; 38:12, 15; 39:22; 40:6, 13; 41:8; 47:22; 48:9, 14; 49:2; 50:13, 19; 51:4; 52:2, 11; 53:20, 23; 55:24; 56:17; 57:19; 58:22; 65:2
**test** [1] - 56:3

**testify** [1] - 28:4
**Texas** [2] - 33:16; 43:25
**texted** [1] - 28:14
**texts** [2] - 25:25
**THE** [145] - 2:4; 3:13, 16, 20, 24; 4:4, 7, 12, 15, 23-25; 5:1, 21; 6:13, 16, 18; 7:2, 6, 9, 17, 20; 8:2, 6, 12, 14; 9:4, 12-13, 15-16, 18-19, 22; 10:2, 5, 16, 21, 25; 11:2, 5, 16, 22; 12:1, 7, 11; 13:20, 24; 14:2; 15:4, 8-9, 14-15, 18-20, 23, 25; 16:1-3, 5-6, 10; 18:7, 12-13; 19:8; 20:10, 20; 21:3, 5, 12, 20, 25; 22:5, 10, 20, 25; 23:7, 15; 25:5, 21; 26:2, 6, 12, 19; 30:15; 31:14; 35:3; 36:1, 10, 14; 37:1, 12, 21; 38:6, 9; 39:16, 19; 40:8, 10, 15, 17, 21; 41:8, 11; 46:5, 12-13, 17; 47:2, 5; 49:23; 52:13, 18, 22, 25; 54:10, 13; 59:9, 14, 24; 60:3, 13; 61:12, 20; 62:16, 21; 63:8, 10, 16, 21; 64:5, 10, 14; 65:8, 11, 16, 20, 22
**themselves** [2] - 3:9; 30:6
**therapy** [3] - 45:21; 46:22
**thereby** [1] - 59:7
**thereto** [1] - 40:24
**they've** [1] - 7:17; 9:4; 64:18
**thinking** [1] - 45:21
**third** [2] - 19:5; 60:1
**thoroughly** [1] - 31:3

**thousands** [1] - 33:2
**threat** [2] - 55:9, 11
**three** [5] - 14:16; 30:13; 41:17; 43:20; 53:12
**three-fifths** [1] - 41:17
**throughout** [1] - 42:18
**throw** [1] - 49:9
**thrust** [1] - 22:10
**tied** [1] - 43:15
**Title** [1] - 53:5
**today** [9] - 2:11; 12:5; 13:15; 15:13; 16:4, 8; 20:6; 22:3; 26:22
**today's** [1] - 11:11
**took** [2] - 15:20; 49:13
**topnotch** [1] - 20:24
**total** [7] - 19:2, 9, 17; 50:25; 52:1; 53:5; 59:18
**totally** [1] - 40:10
**touch** [1] - 30:18
**tours** [1] - 20:22
**toward** [1] - 41:25
**trainers** [2] - 32:16, 19
**training** [2] - 41:8; 53:15
**transcript** [4] - 23:4, 8; 66:7
**translates** [1] - 53:1
**trauma** [11] - 30:3; 31:21; 42:16, 22; 43:8, 11, 15; 45:1; 55:3
**treated** [2] - 48:6; 55:11
**treating** [1] - 48:5
**treatment** [7] - 41:4; 45:8; 46:1; 53:13, 17; 57:25
**trial** [5] - 27:24; 28:5; 45:6
**tried** [1] - 49:24
**trouble** [1] - 32:8
**true** [3] - 12:18; 29:16; 66:7
**truthfully** [1] - 56:23
**try** [3] - 49:3; 54:6; 64:23

**trying** [12] - 10:21; 22:12; 36:1; 38:9, 18, 22; 39:19, 23; 40:3; 49:10, 14; 60:16
**tunnel** [2] - 49:18; 65:4
**turned** [1] - 32:2
**twice** [1] - 47:7
**two** [12] - 2:6; 12:16, 24; 14:13; 19:3; 33:4; 34:21; 41:2, 5; 50:6; 59:20
**two-level** [1] - 19:3
**type** [2] - 17:22; 48:3
**types** [1] - 48:22
**typical** [1] - 22:15
**typically** [1] - 63:19

**U**

**U.S.C** [2] - 59:21; 66:7
**ultimately** [2] - 13:15; 27:20
**unannounced** [1] - 57:21
**unclear** [2] - 53:23; 54:21
**under** [7] - 14:4; 53:9; 58:4, 17; 59:21; 60:8, 11
**understood** [3] - 23:18; 60:1; 61:1
**unfathomable** [1] - 31:2
**unimaginable** [1] - 31:1
**United** [19] - 2:5; 3:12; 12:16, 18-20; 14:4, 15; 16:17; 18:9; 35:9; 51:13; 53:9; 56:9; 59:2; 60:8; 66:6, 9
**unlawful** [1] - 56:2
**unlawfully** [1] - 56:1
**unless** [3] - 5:3; 19:22; 59:22
**unlocking** [1] - 45:21
**unnecessary** [4] -

48:24; 50:17; 51:11; 59:25
**unreasonable** [1] - 62:3
**unreasonableness** [1] - 13:12
**unrelated** [1] - 63:7
**up** [12] - 6:19; 20:15; 32:23; 43:14; 44:11; 47:24; 50:15; 52:4; 63:11
**upheld** [2] - 12:20, 23
**US** [9] - 3:16, 20; 16:12, 19; 17:7, 9; 18:4; 51:17; 61:5
**utero** [1] - 42:17
**utilize** [1] - 51:4

**V**

**vacated** [1] - 62:4
**vaccinated** [9] - 2:22; 3:1, 14, 18, 22; 4:4, 24; 5:7, 11
**vaccination** [1] - 2:23
**values** [1] - 42:25
**various** [2] - 10:22; 55:20
**verify** [1] - 9:8
**verifying** [1] - 5:25
**version** [1] - 27:23
**versus** [5] - 2:5; 12:19; 14:15; 35:9; 51:13
**victim** [36] - 5:13, 17, 22, 24-25; 6:10, 14, 24; 8:25; 10:9, 16; 11:7; 20:8; 21:1, 15, 23; 23:9; 27:9, 11; 28:3, 5; 29:8, 14; 32:20; 34:12; 37:24; 41:25; 42:6; 58:5; 62:9, 25; 63:1
**victim's** [1] - 23:2; 29:6; 34:24
**victims** [6] - 5:12, 19; 6:1; 10:22; 21:5, 11
**videos** [5] - 28:2;

Sentencing *REDACTED* 5/18/23

30:23; 32:19;
34:21, 23
**videotape** [1] -
47:13
**videotaping** [1] -
51:5
**view** [10] - 13:22,
24; 26:24;
38:14; 39:11;
52:10; 58:14;
59:10; 65:6, 18
**vile** [1] - 30:25
**violence** [1] -
56:14
**violently** [2] -
26:23; 34:20
**Virginia** [5] -
45:13; 46:22;
53:22; 54:17, 24
**visit** [2] - 25:9;
57:2
**visits** [1] - 57:21
**visual** [1] - 58:14
**vocational** [2] -
41:8; 53:15
**volunteered** [1] -
34:16
**vouchers** [1] -
22:22

## W

**wages** [2] - 59:17;
60:23
**wait** [1] - 41:11
**WALSH** [25] -
4:10, 14; 7:8;
8:13; 10:1, 4;
12:6, 10; 14:1;
16:9; 25:18, 24;
26:3, 11, 18;
41:1, 10, 13;
52:24; 54:12;
59:8; 62:14, 18;
64:8; 65:19
**Walsh** [28] - 4:11,
17; 5:2; 7:6;
8:12; 9:14, 22;
12:4; 13:17, 25;
15:1, 7; 16:6;
25:17; 28:23;
40:22; 41:12;
46:5; 49:5;
52:23; 54:10;
59:4; 62:9, 13,
24; 63:8; 65:18
**WALSH-LITTLE**
[25] - 4:10, 14;
7:8; 8:13; 10:1,
4; 12:6, 10;

14:1; 16:9;
25:18, 24; 26:3,
11, 18; 41:1, 10,
13; 52:24;
54:12; 59:8;
62:14, 18; 64:8;
65:19
**Walsh-Little** [28] -
4:11, 17; 5:2;
7:6; 8:12; 9:14,
22; 12:4; 13:17,
25; 15:1, 7;
16:6; 25:17;
28:23; 40:22;
41:12; 46:5;
49:5; 52:23;
54:10; 59:4;
62:9, 13, 24;
63:8; 65:18
**warn** [1] - 57:22
**Washington** [5] -
16:20; 17:7, 10,
13; 18:4
**watch** [1] - 34:22
**watched** [1] -
32:18
**ways** [1] - 34:22
**wear** [3] - 3:3; 4:8;
5:3
**weeds** [1] - 51:17
**week** [3] - 7:4;
10:7
**welcome** [3] -
20:12, 21; 63:13
**West** [3] - 53:22;
54:16, 24
**whatsoever** [1] -
58:5
**who've** [1] - 42:12
**whoever's** [1] -
5:6
**whole** [2] - 6:4;
48:14
**willing** [1] - 61:8
**wish** [2] - 33:21;
46:10
**withdraw** [1] -
10:1
**withdrawn** [2] -
10:2; 21:10
**witnesses** [1] -
12:7
**woman** [1] - 43:23
**womb** [1] - 43:16
**won** [1] - 22:18
**woods** [1] - 3:6
**word** [2] - 47:9;
48:11
**world** [2] - 33:22;
34:22

**worn** [2] - 2:13,
21
**worse** [1] - 29:18
**worst** [5] - 27:3;
28:8; 29:5
**wrongfully** [1] -
29:7
**wrote** [2] - 28:24;
32:22

## Y

**year** [4] - 16:12;
53:7, 11
**years** [53] - 13:3;
14:16; 17:24;
27:14, 18;
32:24; 33:7;
34:7, 15, 17, 21;
35:1, 11, 18, 20;
36:6, 23; 37:7,
9; 38:1, 20;
39:3-5, 7, 12;
41:16; 44:16;
45:3; 47:6-8,
24; 49:9, 16, 19;
50:4, 9-10, 15;
51:20; 52:5;
53:1, 6; 55:19,
21, 23; 65:4
**years'** [8] - 35:18,
20; 36:23;
37:14; 51:7;
52:4, 9
**yesterday** [2] -
8:17, 20
**younger** [1] - 43:9

## Z

**zero** [1] - 28:24

## §

**§** [6] - 14:4; 53:5,
9; 56:9; 59:2;
66:7